UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

### Case Number: 14-21384-CIV-MORENO

RENATA CIRCEO-LOUDON and LOUIS J.
CIRCEO, on behalf of themselves and all others
similarly situated,

      *Plaintiffs*,

vs.

GREEN TREE SERVICING, LLC, GREEN
TREE INSURANCE AGENCY, INC.,
ASSURANT, INC., and AMERICAN RELIABLE
INSURANCE COMPANY,

      *Defendants*

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

This matter comes before the Court upon a review of Defendant American Reliable Insurance

Company ("ARIC")'s Motion to Dismiss (**D.E. No. 18**), filed on <u>**June 23, 2014**</u>, Defendant's

reliance on recent appellate cases here is directly on point. For the foregoing reasons, the Court

GRANTS Defendant's Motion to Dismiss.


I.    <u>Factual Background</u>

Plaintiffs have sued American Reliable Insurance Company ("ARIC"), along with two other

defendants, alleging that ARIC participated in a nationwide force-placed insurance scheme,

intending to "manipulate" the lender-placed insurance market and "artificially inflate premiums" by

agreeing with Green Tree Servicing, LLC ("Green Tree") and Green Tree Insurance Agency, Inc.

("Green Tree Insurance") to pay kickbacks disguised as commissions and other allegedly "unmerited

charges." Lender-placed insurance is insurance which, pursuant to the terms of the mortgage, a

lender or loan servicer purchases to provide continuous coverage on property serving as collateral when the borrower fails to maintain coverage. The lender or loan servicer (in this case, Green Tree) obtains the coverage from the insurer (here, ARIC), and then attempts to recover the cost of the LPI from the borrower/property owner.

ARIC filed a Motion to Dismiss the Complaint in its entirety in June 2014, which the Court reviews here.

## II.    Legal Standard

Under Rule 12(b)(6), a complaint must be dismissed when it fails "to state a claim upon which relief can be granted." "[A] complaint must allege enough facts to state a claim to relief that is plausible on its face and that rises above the speculative level." *Traylor v. P'ship Title Co., LLC*, 491 F. App'x 988, 990 (11th Cir. 2012). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[P]lausibility" demands "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

## III.    Legal Analysis

### A.    The Claims Against ARIC are Barred by Disclosures Plaintiffs Received

Plaintiffs do not dispute that their mortgage obligated them to maintain continuous hazard and other insurance on their property for the purpose of protecting the lender's interest in the property. It is further uncontested that Plaintiffs understood that if they failed to maintain the

insurance, their lender could do and pay for whatever it found to be appropriate to protect its interest, including purchasing insurance and charging Plaintiffs for the lender-placed insurance. Finally, Plaintiffs do not dispute that they were notified that the LPI would be substantially more expensive than the insurance they could obtain on their own, and that compensation would be received by the lenders or their affiliates for the placement of LPI.

In a recent Seventh Circuit decision, the court reviewed an almost identical set of facts and found it critical that

> [i]t was [plaintiffs'] responsibility to maintain hazard insurance on the property at all times; if [they] failed to do so, [their lender] had the right to secure the insurance … and pass the cost on to [them]. [Plaintiffs' lender] fully disclosed that lender-placed insurance may be significantly more expensive than [plaintiffs'] own policy and may include a fee or other compensation to the bank and its insurance-agency affiliate. In short, maintaining property insurance was [plaintiffs'] contractual obligation and [they] failed to fulfill it; because the consequences of that failure were clearly disclosed to [them], none of [their] claims for relief can succeed.

*Cohen v. American Security Insurance Co.*, 735 F.3d 601, 604 (7th Cir. 2013). The Eleventh Circuit reviewed a very similar case shortly thereafter, adopting the reasoning in *Cohen* in its analysis. *Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098 (11th Cir. 2014).

Here, Plaintiffs' allegations virtually mirror those in *Cohen,* and similarly, those in *Feaz*. As Plaintiffs do here, the plaintiff in *Cohen* alleged that the charges for the LPI were inflated and overpriced because the premium allegedly included substantial, undisclosed kickbacks which paid for the placement and servicing of the insurance. *See id.* at 604. And like the Plaintiffs here, the plaintiff in *Cohen* alleged she would not have paid the LPI premium had she known about the

-3-

"kickbacks." *Id.* In attempts to distinguish *Cohen*, Plaintiffs misconstrue that case and contend that the plaintiff there conceded that the so-called "kickbacks" were lawful "compensation" for the placement and servicing of the insurance. This distinction is unconvincing. Here, the Court focuses on the meat of the allegations, determining that "[t]he substance of the transaction was clearly and fully disclosed [to plaintiff]; no material fact was omitted." 735 F.3d at 609. As was the lender in *Cohen*, here, Green Tree was consistently clear that it did not act on Plaintiffs' behalf or represent their interests. Plaintiffs' mortgage uses nearly identical terms as the mortgage in *Cohen* to make clear that the insurance requirement was for the *lender's* protection: "All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates." *Compare* D.E. 18-1 (¶ 5) *with Cohen*, 735 F.3d at 604, 611-12. Plaintiffs' mortgage also similarly states: "This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan." *Compare* D.E. 18-1 (¶ 5) *with Cohen*, 735 F.3d at 604, 611. Plaintiffs' mortgage specifically advised that the LPI policies would protect the lender and might not protect plaintiff: "[S]uch coverage *shall cover Lender*, but might or might not protect Borrower." *Compare* D.E. 18-1 (¶ 5) *with Cohen*, 735 F.3d at 605 (emphasis added).

Plaintiffs' mortgage gives Green Tree broad discretion to act to protect its own interest, and like the plaintiff in *Cohen*, Plaintiffs here were repeatedly advised that LPI could be much more expensive than insurance they could obtain for themselves. *Cohen*, 735 F.3d at 611. Under these undisputed facts, Green Tree was not subject to divided loyalties. *See also Feaz*, 745 F.3d at 1111 (finding that Plaintiffs' "kickback" allegations fail to provide any viable basis for their claims, and

-4-

affirming dismissal of all extracontractual claims, stating "We agree with the Seventh Circuit that 'simply calling a commission a kickback doesn't make it one. The defining characteristic of a kickback is divided loyalties. But [the lender] was not acting on behalf of [the borrower] or representing her interests. The loan agreement makes it clear that the insurance requirement is for *the lender's* protection.") (italics in original) (quoting *Cohen,* 735 F.3d at 611)). Mark Twain keenly observed that "If you laid all of our laws end to end, there would be no end." But on the set of facts presented to the Court, there is legal authority directly on point. Plaintiffs fail to distinguish their allegations from those found unpersuasive in both *Cohen* and *Feaz. See Cohen*, 735 F.3d at 611; *Feaz,* 745 F.3d at 1111-12.

     B.    <u>Plaintiffs' RICO Claims Fail to State a Cause of Action</u>

         1.    All relevant disclosures were provided

Plaintiffs do not dispute that they received written notice that they were obligated to maintain insurance on their property and that, if they failed to do so, the lender would obtain coverage which might cost substantially more and provide less coverage than available to Plaintiffs' themselves. Nor do Plaintiffs dispute that the disclosures informed them that affiliates of Green Tree may receive a financial benefit with the LPI placements. Nonetheless, Plaintiffs argue that their racketeering allegations are sufficient because they claim that the disclosures failed to advise them that alleged "kickbacks" were "bundled into their premiums." This Court determines such allegations to be senseless. Drawn to a logical conclusion, Plaintiffs' theory of damages amounts to a claim that if they knew the charges were kickbacks, they would have breached a contractual duty to pay. Losing an opportunity to breach a contract cannot constitute a cognizable fraud harm. Ultimately, the disclosures provided to Plaintiffs bar their RICO claims.

2.      Plaintiffs' allegations do not establish RICO causation

Moreover, RICO proximate causation requires a "direct relation" between the injury asserted and the injurious conduct alleged. *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 654 (2008). In this case, plaintiffs fail to explain how or why Defendants' purported mail and wire frauds proximately caused insurance to be placed when the same insurance would have been placed regardless of the alleged fraud. The direct "cause" of the alleged injury here is the LPI placement, not the supposedly inaccurate letters sent in the mail. Since plaintiffs do not "direct the Court to any allegations of reliance whatsoever," their RICO claims fail. *See In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 915-16 (C.D. Cal. 2012).

3.      Plaintiffs do not adequately allege operation or management of a RICO enterprise

As a final death knell for their RICO claims, Plaintiffs make no allegation that ARIC participated in the "operation or management" of any alleged RICO enterprise. *See Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993). ARIC is alleged to have provided lender-placed insurance to Green Tree, *i.e.*, to have performed a service in the course of ARIC's normal business activities. Plaintiffs argue that they have sufficiently alleged participation in the operation of a RICO enterprise because they allege that Defendants have "overstepped the boundaries of the legitimate business of insurance" by paying commissions and sending notices that "foster[ed] the mistaken impression" in Plaintiffs that the amounts charged for lender-placed insurance were legitimate. These allegations fail to meet the requirements for mail and wire fraud because the disclosures were accurate and fail to actually support any claim of fraud. *See Cohen*, 735 F.3d at 604.

C.      Plaintiffs Fail to State a Claim for Tortious Interference

Without conceding that a breach of contract is necessary for their tortious interference claim,

Plaintiffs argue that they have adequately pled that Green Tree breached their mortgage agreements

and that Defendant ARIC intentionally and unjustifiably caused such breaches. The allegations

regarding tortious interference are based entirely on Plaintiffs' mortgage, turning on the allegation

that ARIC has an alleged "advantageous business and contractual relationship[] with the Green Tree

Defendants pursuant to the mortgage contracts," including the "right not to be charged exorbitant

premiums ... for forced-place insurance." Complaint ¶ 122. Under Florida law, however,

interference with a business relationship and with a contract form "a single claim because the prima

facie showing for intentional interference with contractual relationships and intentional interference

with business relationships are, in substance, the same." *In re Pearlman*, 2010 WL 3431825, *1

(M.D. Fla. Aug. 27, 2010). Moreover, the Eleventh Circuit has held that "a claim for a breach of

implied covenant of good faith and fair dealing cannot be maintained under Florida law in the

absence of a breach of an express term of a contract." *Centurion Air Cargo, Inc. v. United Parcel

Serv. Co.,* 420 F.3d 1146, 1152 (11th Cir. 2005); *see also Brueggmann v. NCOA Select, Inc.,* 2009

WL 1873651, *6 (S.D. Fla. June 30, 2009) (same). Accordingly, absent plausible allegations of a

breach of Plaintiffs' mortgage, the tortious interference claim against ARIC fails.


D.      Plaintiffs' Unjust Enrichment Claim Is Governed By An Express Contract

To state a viable Florida claim for unjust enrichment, a plaintiff needs to plead: (1) he

conferred a benefit on defendant; (2) defendant knew of the benefit; (3) defendant accepted the

benefit conferred; and (4) it was inequitable under the circumstances for the defendant to retain the

benefit without paying for it. *Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1274 (11th Cir. 2009)

-7-

(citing *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. Dist. Ct. App. 2006)). An unjust enrichment claim "fail[s] on the showing of an express contract." *Validsa, Inc. v. PDVSA Servs., Inc.*, 424 F. App'x 862, 873 (11th Cir. 2011). No cause of action in quasi-contract exists where the parties' relationship is governed by an express contract. *Id.*

Here, Plaintiffs' unjust enrichment claim is based on ARIC's receipt of alleged benefits in the form of funds for force-placed insurance premiums related to force-placed insurance policies. Plaintiffs' unjust enrichment claim fails here because it is based on a written insurance contract. The existence of written contracts that govern the subject matter of the dispute defeats the unjust enrichment claim as a matter of law. *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 697 (Fla. Dist. Ct. App. 2008).

The unjust enrichment claim also fails because plaintiffs do not allege any facts showing a direct payment of the premium, or premium components such as commissions, by Plaintiffs to ARIC. Florida law has a "'direct payment' requirement" for unjust enrichment claims, which requires that a plaintiff has made a "direct payment" to a defendant, one which would be unjust for the defendant to retain. *Kunzelmann v. Wells Fargo Bank, N.A.*, 2013 WL 139913, *5-6 (S.D. Fla. Jan. 10, 2013) (citing *Virgilio v. Ryland Grp.*, 680 F.3d 1329 (11th Cir. 2012)). The Complaint alleges that Green Tree obtained and paid for the LPI premium, and that commissions, reinsurance premiums and other benefits were paid by ARIC to Green Tree or its affiliate. Thus, Plaintiffs' unjust enrichment claim fails. *See Kunzelmann*, 2013 WL 139913, at *6 (holding that the unjust enrichment claim in LPI case fails because "commission … [was] not paid to [servicer] by the plaintiff[], but instead the insurance company pays it").

Plaintiffs contend that they are entitled to plead their unjust enrichment claim in the alternative. However, the rule that permits alternative pleading of unjust enrichment claims applies

where there is uncertainty regarding whether a contract exists. As the court in *Zarrella v. Pacific Life Insurance Co.* explained, though Rule 8 permits alternative pleading, "an unjust enrichment claim can only be plead in the alternative if one or more parties contest the existence of an express contract governing the subject of the dispute," and this is not the case here. The parties do not dispute the existence of an express contract governing their insurance policy agreement, so the equitable remedy of unjust enrichment is not available. 755 F. Supp. 2d 1218, 1227 (S.D. Fla. 2010).

IV.    Conclusion

For the reasons stated herein, the Court GRANTS Defendant's Motion and dismisses all claims asserted against Defendant ARIC.

DONE AND ORDERED in Chambers at Miami, Florida, this day of August, 2014.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of Record

-9-