**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 14-cv-21384-MORENO**

RENATA CIRCEO-LOUDON and LOUIS J.
CIRCEO, on behalf of themselves and
all others similarly situated,

       Plaintiffs,

v.

GREEN TREE SERVICING, LLC, GREEN TREE
INSURANCE AGENCY, INC., and
AMERICAN RELIABLE INSURANCE
COMPANY,

       Defendants.

_____/

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**
**AND INCORPORATED MEMORANDUM OF LAW**

## INTRODUCTION

Nine force-placed insurance ("FPI" or "LPI") class actions that have been litigated to resolution in this district over the past four years have ended with certification of a Florida or nationwide class.[1]  Two more FPI class actions have recently settled in this district, and the parties will seek or are currently seeking certification of nationwide classes.[2]  Assurant, Inc. and its subsidiaries (like American Reliable Insurance Company ("ARIC") here), have advocated for judicial approval of seven of these settlements, and have never once opposed certification of a settlement class.

Assurant's silence in those cases weighs strongly against any argument by Defendants here that the Rule 23 factors cannot be satisfied, as the standard for certification of a litigation class is the same as that for certification of a settlement class, save manageability concerns.  *See, e.g., In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036, 2012 U.S. Dist. LEXIS 105384, at *45 (S.D. Fla. July 26, 2012) (court certifying settlement class "must consider same factors that it would consider in conjunction with a proposed litigation class," save manageability) (citing *Amchem Prods. v. Windsor*, 521 US 591 (1997)); *Saccoccio v. JPMorgan Chase Bank, N.A.*, 297 F.R.D. 683, 690-91 (S.D. Fla. 2014) (Rule 23 requirements "demand undiluted, even heightened attention in the settlement context[,]" with exception of manageability) (quoting *Amchem*, 521 U.S. at 620).

There is no dispute that mortgage lenders and servicers have charged homeowners hundreds of millions of dollars in recent years for the FPI coverage provided by Assurant, which controls approximately 93% of the market for FPI.  Defendants ARIC, an Assurant subsidiary,

---

[1]  *See Lee v. Ocwen Loan Servicing, LLC*, No. 14-cv-60649 (S.D. Fla.); *Braynen v. Nationstar Mortgage, LLC*, No. 14-cv-20726 (S.D. Fla.); *Hamilton v. SunTrust Mortg., Inc.*, No. 13-cv-60749 (S.D. Fla.); *Hall v. Bank of Am.*, No. 12-cv-22700 (S.D. Fla.); *Fladell v. Wells Fargo Bank, N.A.*, No. 13-cv-60721 (S.D. Fla.); *Diaz v. HSBC Bank (USA), N.A.*, No. 13-cv-21104 (S.D. Fla.); *Pulley v. JPMorgan Chase Bank, N.A.* No. 12-cv-60936 (S.D. Fla.); *Saccoccio v. JPMorgan Chase Bank, N.A.*, No. 13-cv-21107 (S.D. Fla.); *Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665 (S.D. Fla. 2012).  The fact that some of these cases involved settlement classes is irrelevant to the issues of commonality, adequacy, typicality, and predominance because the settlement classes were subject to the same Rule 23 analysis as the litigation classes, save manageability.  *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

[2]  *See Montoya v. PNC Bank, N.A.*, No. 14-cv-20474 (S.D. Fla.); *Wilson v. Everbank N.A.*, No. 14-cv-22264 (S.D. Fla.).

Green Tree Servicing, LLC ("Green Tree"), and its affiliated insurance "agent" Green Tree Insurance Agency, Inc. ("Green Tree Insurance"), have reaped extraordinary profits from this closed market by entering into exclusive arrangements for the provision of FPI, whereby Green Tree is provided below-cost administrative mortgage services (that often have nothing to do with the placement of FPI) and ARIC and its affiliates kick back unearned "commissions" and other improper payments to the Green Tree Defendants, the charges for which are unreasonably passed on to borrowers and thus charge them excessive amounts beyond the cost of the FPI coverage.

After years of hard-fought litigation in class actions brought across the nation, many before this Court, and extensive investigations brought by numerous state and federal insurance regulators, some of the wrongful practices that are the subject of this lawsuit have subsided. State regulators concluded that Defendants' actions are wrongful and have prohibited certain practices in their states.[3]  However, there is much work still to do – these prohibitions have not deterred Green Tree from continuing to profit from FPI wherever it can.

By certifying the classes proposed by Plaintiffs, the Court will avail many hundreds of thousands of homeowners who were directly affected by these practices of their only opportunity to seek monetary damages, and Plaintiffs of the opportunity to ensure at trial that these Defendants will cease all of their illegal practices for all Green Tree borrowers nationwide.

Over the past four years, as a result of counsel's investigations into many of the prior FPI cases pending before this Court, and as confirmed in extensive discovery and the expert report of Mr. Birny Birnbaum in this action, ARIC and Green Tree have treated every class member in an

---

[3] For example, Florida and New York have entered into consent orders that prohibit Assurant and its subsidiaries from paying "commissions" or performing below-cost servicing to lender or mortgage servicers.   And, Fannie Mae and Freddie Mac have issued servicing guide announcements which similarly prohibit servicers from reaping these profits on any of their loans.

identical manner by: (1) notifying them that their coverage had lapsed and new coverage had been forced with the same cycle of form letters; (2) forcing coverage for every borrower from one master policy that covered Green Tree's entire loan portfolio; (3) placing the new coverage in the same manner for every member of the proposed classes; and (4) including the same impermissible costs in the amounts charged every putative class member for coverage. The only variant among class members will be their amount of damages, though the total damages to the class can be determined on a class-wide basis through a uniform methodology proposed by Mr. Birnbaum.

As noted above, this Court has already certified litigation and settlement classes in nine nationwide class action cases involving FPI. In *Williams v. Wells Fargo Bank, N.A.*, which involved some of the same claims and legal theories at issue here, Judge Scola found that the plaintiffs' allegations and evidence of a common scheme supported certification of the proposed class, reasoning:

> The essence of this case, as alleged, is a common scheme to systematically, and without any individual consideration, force-place insurance at an excessive rate to every person whose self-placed property insurance had lapsed. The determination of the truth or falsity of the Plaintiffs' allegations that Wells Fargo and QBE engaged in a scheme to force-place insurance with inflated and excessive premiums will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665, 672 (S.D. Fla. 2012).

Courts have reached the same well-reasoned conclusion in other cases certifying classes in connection with similar FPI kickback schemes. *See, e.g., Ellsworth v. U.S. Bank, N.A.*, No. 12-cv-02506, 2014 WL 2734953 (N.D. Cal. June 13, 2014) (certifying multistate force-placed flood insurance breach of contract claims); *Lane v. Wells Fargo Bank, N.A.*, No. 12-cv-4026, 2013 WL 3187410 (N.D. Cal. June 21, 2013) (certifying statewide force-placed insurance breach of contract claims).[4] The reasoning of *Williams*, *Ellsworth*, and *Lane* applies with equal force here.

---

[4] *See also, e.g., Hofstetter v. Chase Home Fin., LLC*, No. 10-cv-1313, 2011 WL 1225900 (N.D. Cal. Mar. 31, 2011) (certifying force-placed flood insurance contract claims for nationwide settlement class); *Clements v. JPMorgan Chase Bank, N.A.*, No. 12-cv-2179 (N.D. Cal. June 6, 2014) (ECF No. 91) (same).

Here, ARIC and its affiliates provided various types of kickbacks to Green Tree during the proposed class period including: (1) unearned "commissions" paid to a Green Tree affiliate for work purportedly performed to procure individual policies; (2) below-cost mortgage outsourcing services that subsidize Green Tree's routine mortgage servicing functions; Borrowers ultimately bear the cost of these kickbacks – Green Tree and ARIC bundle the costs into the amounts charged for insurance coverage and deduct them from borrowers' escrow accounts or add them to the principal, disguising the charges as legitimate by characterizing them as benefits earned by Green Tree when, in fact, they are unearned profits.

Plaintiffs Renata Circeo-Loudon and Louis J. Circeo's claims are perfectly suited for class certification. Through their common scheme, Defendants included the same impermissible costs in amounts charged to Green Tree borrowers for force-placed insurance. The primary issue common to each and every class member is whether Defendants charged borrowers for illusory "fees," subsidized mortgage servicing, and unearned "commissions," and correspondingly, whether these charges were properly disclosed and legitimate. These issues are "capable of class-wide resolution" and "determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

Moreover, as detailed in the report of Plaintiffs' expert, Birny Birnbaum, an economist, former insurance regulator, and the Executive Director of the Center for Economic Justice,[6] who has been accepted as an expert in every force placed class action that he has appeared, calculating damages is a straightforward process that can be applied in a uniform manner across the classes. Indeed, Mr. Birnbaum's damages calculation has been adopted by three separate courts – one within this district – in certifying classes of borrowers injured by analogous force-placed insurance kickback schemes. *See e.g,. Ellsworth*, 2014 WL 2734953, at*25-26 ("Birnbaum's methodology—accepted by other courts—is sufficiently detailed at class certification"); *Lane*, 2013 U.S. Dist. LEXIS 87669, at *26-27 (describing Birnbaum's

---

[6] Mr. Birnbaum's report in this action is attached as **Exhibit A**.

methodology and concluding that "Plaintiffs have a class-wide method for trying to prove damages"); *Williams,* 280 F.R.D. at 671 ("Birnbaum is qualified to proffer the testimony rendered in this case regarding the class-wide determination of whether the force-placed insurance premiums were excessive, and if so at what rates.").

Numerosity, typicality, and adequacy are also readily satisfied. There is no dispute that the nationwide class is composed of tens of thousands of Green Tree mortgagors, and that Green Tree similarly charged thousands of homeowners in Florida and nationwide for force-placed hazard coverage during the proposed class period. Plaintiffs do not have interests that conflict with the class, and the routine and automated manner by which force-placed insurance is placed renders their claims typical of all other class members. Indeed, other than the amount of coverage, no individual characteristics of the borrower or property are ever considered. Finally, Plaintiffs' counsel are highly qualified to represent the proposed class and will diligently prosecute the class claims.

Plaintiffs' claims further meet the requirements under Rule 23(b)(3), as common issues of law or fact predominate over individual issues and class treatment is superior to other methods of adjudication. As detailed herein, the predominant issues here are whether Green Tree's mortgage servicing operations were subsidized in exchange for Green Tree agreeing to purchase exorbitantly priced insurance from ARIC and its affiliates, whether any "commission" paid to Green Tree Insurance was proper, and whether these amounts were appropriately passed to borrowers. Additionally, a class action is the superior method of adjudication because the claims of individual class members are too small to litigate on an individual basis against Green Tree and ARIC, both sophisticated corporate entities. If the proposed classes are not certified, thousands of borrowers will almost certainly be deprived of any recovery. Moreover, this litigation is already well underway and the Court has considered and become familiar with the key issues. Forcing individual mortgagors to begin again would not serve the interests of this Court or the proposed class.

Accordingly, Plaintiffs seek to have Defendants return these unlawfully charged amounts to a nationwide class of borrowers, as well as a Florida subclass. Specifically, pursuant to Federal Rule of Civil Procedure 23, Plaintiffs respectfully move for certification of a nationwide class of borrowers under RICO and TILA comprised of:

> All borrowers who had mortgages held and/or serviced by Green Tree on properties nationwide, who were charged for force-placed insurance coverage issued by ARIC or any of its affiliates within the applicable statutes of limitation between January 1, 2008 and the present ("the Class Period").
>
> Excluded from this class are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers, and/or employees.

Plaintiffs move for certification of a Florida class on their state common law claims against both Defendants, defined as follows:

> All borrowers who had mortgages held and/or serviced by Green Tree on properties located within the State of Florida, who were charged premiums for force-placed hazard insurance coverage issued by ARIC or any of its affiliates within the applicable statutes of limitation between January 1, 2008 and the present ("the Class Period").
>
> Excluded from this class are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers, and/or employees.

## PROCEDURAL HISTORY

Plaintiffs filed this matter more than fourteen months ago, on April 17, 2014. (D.E. 1). Plaintiffs filed an Amended Complaint on October 17, 2014 (D.E. 52). After extensive briefing and oral arguments on the Defendants' Motions to Dismiss, this Court entered an order denying the motions in their entirety. (D.E. 70). Extensive discovery has been conducted by all parties and is ongoing. The Court entered a Scheduling Order setting trial for this matter in November 2015, (D.E. 75). The Court also ordered the parties to mediate this matter before September 30, 2015. (D.E. 76). A mediator has already been selected, and the parties are currently scheduling a date for mediation to take place in August.

## STATEMENT OF COMMON FACTS

### A.   The Forced-Placement of Insurance and The Inclusion of Improper Kickbacks is Uniform for All Borrowers.

The standard mortgage agreements used by all major mortgage lenders or servicers, including Green Tree, require the borrower taking the mortgage loan to secure property insurance to cover losses to the property, and entitle the lender to procure and place new insurance to cover its risk or interest in the collateral in the event of lapse in the borrower's "voluntary" insurance. (Ex. A at 16; *see, e.g.*, Plaintiffs' Mortgage Agreement, attached as **Exhibit B**.) The insurance placed by the lender is known as "lender-placed" or "force-placed"

6

insurance, and generally carries premiums that cost many times more than the premiums associated with the borrowers' voluntary policy but provide less coverage.  (Ex. A at 19-20.)

The FPI coverage purchased by a servicer differs from "homeowners" insurance in that it is purchased by the mortgage servicer to protect the lender's interest in the property, as opposed to voluntary homeowners' insurance that is purchased directly by the borrower.  As explained in the Birnbaum Report, FPI coverage is provided pursuant to a master group policy, which is a commercial insurance policy between the servicer and the insurance provider.[7]  (Ex. A at 18, 35; Andrew Jeska Dep. 195:4-14, September 30, 2014, attached as **Exhibit C**.)  The loan servicer is typically the named insured on a master group policy and, pursuant to the mortgage contract, the costs of coverage are passed on to borrowers.  (Ex. A at 27.)  The charge by Green Tree to the borrower is <u>not</u> an insurance premium:  "No Class Member paid a premium to an insurance company for the Green Tree LPI.  No insurance company paid a refund to any Class Member when Green Tree LPI coverage was canceled.  No Green Tree LPI coverage was canceled because a Class Member failed to make a payment."  (Ex. A at 4, see also Ex. A at 27.)

Here, Green Tree purchased a master policy from ARIC and affiliates to cover its entire portfolio of mortgage loans.  (Ex. C (Jeska Dep.) at 195:4-14 and 198:23-199:7).  Under the master policy, once a property becomes eligible for coverage (i.e. once a lapse occurs), a certificate of coverage is issued for the individual property under the master policy.  (Ex. A at 18-19.)


Ex. C (Jeska Dep.) at 96:11-97:25).  The tracking program is done pursuant to a policy and procedures manual and

(Ruta Andris Dep. 96:6-9, June 9, 2015 attached as **Exhibit E**; Green Tree User Requirements Manual attached as **Exhibit F**.)

The detection of a lapse triggers the automatic and fully automated mailing of a cycle of three form letters, first notifying borrowers of the lapse and requesting coverage and warning that if the lapse is not remedied, then new coverage will be placed by the lender at the borrower's

---

[7] ARIC filed its FPI policy in Florida as an Inland Commercial Marine Policy.  It was not subject to a review by the Florida regulators.  (Ex. A at 35)

expense, then reminding the borrower again that proof of coverage is needed and providing a binder with the annual FPI policy premium ARIC will charge to Green Tree, and finally informing the borrower that an FPI policy has been purchased and that borrower will be responsible for the payment.  (*See, e.g.*, Ex. F; Ex. C, (Jeska Dep.) at 57:8-13 and 235:13-238:11; Ex. E (Andris Depo. 78:13-16; 80:22-81:25; 111:16-20); *see also* Plaintiffs' sample letters, attached as **Exhibit G**.)  The final letter to the borrower also includes a certificate of coverage issued from the master policy.  (Ex. C (Jeska Dep.) 238:23-25).

After Green Tree purchases the coverage from ARIC, Green Tree adds the full amount of the stated premium to the balance of the borrower's mortgage loan or deducts it from the borrower's escrow account. (Ex. A at 43-44.)  However, because ARIC kicks back a portion of the premium to Green Tree in the form of "commissions" and subsidized outsourcing (as well as in "fees" and other considerations), the amount charged to borrowers far exceeds the actual amount paid to insure and protect the lender's interest in the property.

The amount of the commission or the exclusive relationship between Green Tree and ARIC is not disclosed in the letters to the borrowers. (Ex. C (Jeska Dep.) at 166:2-167:7).  Further, the letters to the borrowers inform them that they will have to pay for the "costs" that Green Tree incurs in placing the FPI despite the fact that ARIC is actually performing this function and the processes are all automated.  (Ex. G).

**B.      The Green Tree Kickback Scheme**

As noted above, Defendants' FPI scheme included kickbacks paid by ARIC and its affiliates to Green Tree in two primary forms – unearned commissions[8] and below-cost outsourcing – that were charged uniformly to borrowers across the proposed classes.

---

[8]  ARIC paid kickbacks to Green Tree Insurance in the form of unearned "commissions" purportedly paid to procure new coverage for individual borrowers.  (Ex. A at 45.)  However, Green Tree did not place individual coverage, (Ex. E (Andris Depo.) at 114:19-115:3), and, Plaintiffs allege, performs no services to earn its "commission." (D.E. 52 ¶¶ 37-39).

### 1. "Commission" Payments to Green Tree Insurance

At that time, Green Tree was servicing only mobile home loans and the Agreement provided for Green Tree Insurance to collect a commission on all FPI policies placed on mobile homes in their portfolio.

(*Id.*).  This commission is paid despite the fact that Green Tree Insurance does nothing to place an individual policy for any individual borrower.  (*See e.g.* Ex. C (Jeska Dep.) at 302:15-303:11; Ex. E (Andris Depo.) at 114:19-115:3; Tribble Dep. At 33:8-34:14; 50:13-51:24; 54:13-19).  The policies are placed pursuant to automated procedures put in place, for all class members, by ARIC and its affiliates and Green Tree Insurance plays no role in those procedures. (*Id.*; Ex. A 43-45)

### 2. Subsidized Mortgage Servicing for Green Tree

Green Tree also has its routine mortgage servicing obligations subsidized, the cost of which is recouped from the FPI purchased from ARIC and the enormous profits generated through ARIC's high-priced, low loss ratio FPI.  (Ex. A at 28-30; 45-46.)  As recently observed by Fannie Mae in connection with a March 6, 2012 Request for Proposal ("RFP"), the existing FPI system "may encourage Servicers to purchase Lender Placed Insurance from Providers that

---

These changes occurred after the filing of the complaint in this matter.

pay high commissions/fees to the Servicers and provide tracking, rather than those that offer the best pricing and terms." (Fannie Mae RFP, attached as **Exhibit I**.)  Significantly, the RFP noted that, in addition to payment of unnecessary commissions/fees, "Fannie Mae is often paying twice for Insurance Tracking services; once via the servicing fee that Fannie May pays to Servicers, and again via the Lender Placed Insurance premiums, since those premiums may include or subsidize the costs of tracking services."  *Id.*

ARIC and its affiliates recoup their expenses through the FPI premiums charged to Green Tree, and the subsequent amounts that Green Tree unlawfully assessed to force-placed borrowers such as Plaintiffs.  (Ex. A at 43-45.)

### C.      Plaintiffs Renata Circeo-Loudon and Louis J. Circeo

Green Tree services a mortgage on property in Miramar Beach, Florida owned by Plaintiffs.  (Ex. B.).  Plaintiffs' mortgage agreement provides as follows:

> **5. Property Insurance**.  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards, including floods or flooding, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires …. If Borrower fails to maintain coverage described above, Lender may obtain insurance, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular amount or type of coverage. Therefore, such coverage shall cover Lender, but might or might not protect

Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage that was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

(*id*.)

Plaintiffs' voluntary hazard coverage for their property lapsed in June 2012.  (D.E. 52 ¶ 57).  The annual premium they were paying at that time was approximately $1,338.00.  A letter was sent to Plaintiffs on Green Tree letterhead on July 31, 2012 requesting proof of insurance (*Id*. ¶ 58.)  A second letter was sent to Plaintiffs via the automated procedures and via the U.S. Mail on August 30, 2012 indicating the cost of the FPI to be approximately $4,331.00. (*Id*. ¶ 59; *see also* Ex. G).  On September 21, 2012, Plaintiffs obtained a voluntary policy from Citizens Insurance with an annual premium of approximately $1,650.00. (*Id*. ¶ 60.)  On September 25, 2012, ARIC confirmed cancellation of Plaintiffs force-placed insurance policy.  (*Id*. ¶ 61).  Plaintiffs' FPI placement was done to pursuant to the automated functions and the policies and procedures in place for all borrowers in the Green Tree portfolio.  (Ex. C (Jeska Depo) at 58:10-14; 227:5-11).

## LEGAL ARGUMENT

I.   **PLAINTIFFS SATISFY THE REQUIREMENTS OF FEDERAL RULE OF CIVIL PROCEDURE 23(a).**

"It is well established that class actions are a particularly appropriate and desirable means of redressing common claims for uniform legal violations that affect large numbers of persons in the same way." *Brown v. SCI Funeral Servs. of Fla., Inc.*, 212 F.R.D. 602, 603 (S.D. Fla. 2003). Consumer class actions are especially well-suited for class action treatment.  *See, e.g., In re Checking Account Overdraft Litig.*, 275 F.R.D. (S.D. Fla. 2011) (certifying class of consumers with claims relating to bank overdraft fees); *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672 (S.D. Fla. 2004) (certifying a nationwide class of consumers with claims arising from sales of hypertension drug).

Federal district courts have broad discretion in deciding motions for class certification. *Moreno-Espinosa v. J&J AG Prods.*, 247 F.R.D. 686, 687-88 (S.D. Fla. 2007).  "In reviewing a motion for class certification, the court is generally bound to take the substantive allegations of

the complaint as true." *Checking Overdraft Litig.*, 275 F.R.D. at 671.  However, the court may look beyond the pleadings to determine whether the Rule 23 requirements have been met. *Id.* "In determining whether the named plaintiffs have met their burden under Rule 23, the Court shall not consider the merits of the Plaintiffs' claims." *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 489 (S.D. Fla. 2003).  "The interests of justice require that in a doubtful case … any error, if there is to be one[,] should be committed in favor of allowing a class action." *Id.* (quoting *In re Amerifirst Sec. Litig.*, 139 F.R.D. 423, 427 (S.D. Fla. 1991)).

Rule 23(a) sets forth four prerequisites for class certification:  numerosity, commonality, typicality, and adequacy of representation.  *Cheney*, 213 F.R.D. at 489; *see* Fed. R. Civ. P. 23(a). The policies underlying the class action rule dictate that Rule 23(a) should be liberally construed. *See Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996). Plaintiffs here satisfy all four requirements as set forth below.

**A.     The Class Is So Numerous That Joinder Would Be Impracticable.**

Rule 23(a)(1) requires Plaintiffs to show that the proposed class is so numerous that joinder of all members would be impracticable.  *See* Fed. R. Civ. P. 23(a)(1).  "While there is no fixed rule, generally a class size [of] less than twenty-one is in adequate, while a class size of more than forty is adequate." *Williams*, 280 F.R.D. at 671 (citing *Cheney,* 213 F.R.D. at 489-90); *see, e.g., Anderson v. Bank of S., N.A.*, 118 F.R.D. 136, 145 (M.D. Fla. 1987) ("[T]he size of the class and geographic location of the would-be class members are relevant to any consideration of practicality."); *Checking Overdraft Litig.,* 2011 WL 3158998, at *2.

The proposed number of class members in this case well exceeds the minimum threshold set by the Eleventh Circuit.  *See Cox,* 784 F.2d at 1553.  Plaintiffs have defined the class and the Florida subclass to include all individuals who were charged for force-placed insurance coverage placed by Green Tree and ARIC on their property after January 1, 2008.  *See* p. 6, *supra*.

The numerosity requirement is satisfied here.

**B.      There Are Questions of Law and Fact Common to All Class Members.**

Rule 23(a)(2) requires class action plaintiffs to identify questions of law or fact common to the class. *See* Fed. R. Civ. P. 23(a)(2). "The threshold for commonality is not high." *Cheney*, 213 F.R.D. at 490 (citation omitted).   Plaintiffs must show that the class members' claims "depend on a common contention" and that the class members have "suffered the same injury." *Dukes*, 131 S. Ct. at 2551.   "[F]or purposes of Rule 23(a)(2) even a single [common] question will do[,]" *id.* at 2556 (brackets in original), and "where a common scheme of conduct has been alleged, the commonality requirement should be satisfied."   *Checking Overdraft Litig.*, 275 F.R.D. at 673-74 (citation omitted); *see, e.g., Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. at 685-86 (commonality satisfied with defendant "engaged in a standardized course of conduct that affects all class members"); *Cheney*, 213 F.R.D. at 490 ("Where a common scheme is alleged, common questions of law or fact will exist.").

Plaintiffs' claims here depend on the common contention that Defendants conceived and implemented a scheme to manipulate and artificially inflate FPI premiums that they would then charge to the borrower.  (D.E. 52).  Green Tree and ARIC's FPI program treats all borrowers with forced coverage in a uniform manner—ARIC's affiliate tracks Green Tree's entire loan portfolio for lapses in coverage, and standard form letters are automatically generated and mailed to borrowers notifying them of lapses and when coverage has been forced.  (Ex. A at 18-20, 43-44.)    There is no deviation based on individual characteristics of the property and no underwriting is performed (*id.*) – the only material variances from letter to letter are the names and addresses of the borrowers and the amount charged.  (Ex. E (Andris Depo) at 83:1-19.)  And as Mr. Birnbaum explains, the amount charged is calculated using a simple and uniform formula, involving the coverage amount on the last known voluntary policy, the replacement cost of the property, or the unpaid principal balance and a standard multiplier.  (Ex. A at 20.)

All members of the putative class were injured in the same manner by this scheme, that is, they were charged amounts for FPI that had been inflated to cover kickbacks to Green Tree, and as a result have paid or now owe amounts in excess of what their mortgage agreements allowed. *See Ellsworth*, 2014 U.S. Dist. LEXIS 81646, at *44-47 (finding commonality where

plaintiffs had "allege[d] a common scheme to force place insurance on borrowers in a way designed to increase kickbacks to U.S. Bank"); *Williams*, 280 F.R.D. at 672 (finding commonality to exist where plaintiffs had argued that "all members of the propose class were injured in the same manner, namely by being charged inflated premiums for the force-placed insurance.").

Thus, while only one question of law *or* fact is required to establish commonality, several common questions that are capable of class-wide resolution—or that will "generate common answers"—arise from Plaintiffs' claims, including, but not limited to, whether:

    a. Defendants overcharged borrowers for force-placed insurance policies that included, unearned commissions, illusory fee or expense payments, and bundled administrative costs;

    b. The "premiums" collected from consumers included charges to which Green Tree was not entitled under the contracts at issue;

    c. Green Tree took unearned kickbacks from consumers through the alleged force-placed insurance scheme; and

    d. Green Tree or ARIC was unjustly enriched as a result of its policies and practices related to force-placed insurance.

No individualized inquiry will be required to answer these questions. For example, Defendants implemented the below-cost administrative services portion of their scheme uniformly as to all borrowers nationwide regardless of their state of residence or individual loan characteristics.

Defendants' Services Agreement, and the related practices employed by Defendants, affected all Green Tree mortgagors with force-placed coverage in precisely the same way. (*Id.*) As a result, the same question will arise with respect to all class members. Resolution of the question of whether these below-cost services were improperly subsidized by borrowers that were force-placed with insurance and thus simply a mechanism by which kickbacks were paid to Green Tree, will stand or fall on whether the scheme alleged, in fact, exists and, as a corollary, whether Defendants' uniform practice impacted all Green Tree mortgagors. These common questions are capable of class-wide resolution. *Cf. Checking Overdraft Litig.*, 275 F.R.D. at 673-74 (commonality requirement met based on common scheme). At this stage, the Court need only decide, based on whatever

14

363085

evidence is required, whether the question of Defendants' participation in a common scheme can be answered with respect to the entire class. *See Comcast, Inc. v. Behrend*, 655 F.3d 182, 199 (3d Cir. 2011) (citation omitted) (at the certification stage, "a district court may inquire into the merits only insofar as it is 'necessary' to determine whether a class certification requirement is met"); *Terazosin Hydrochloride Antitrust Litig.,* 220 F.R.D. at 687 ("Where the complaint alleges that the Defendants have engaged in a standardized course of conduct that affects all class members, the commonality requirement will generally be met.").

The same holds true for the profits generated by the payment of the unearned "commissions." Over the class period Green Tree Insurance collected a standard commission percentage from each force-placed policy.

were these commissions in fact "unearned?"; did Green Tree Insurance actually perform any services for these commissions?; and were Defendants' practices wrongful?

Similarly, whether Defendants were unjustly enriched by the alleged common scheme does not involve individualized inquiry. To certify the class, the Court need not ask whether Defendants were unjustly enriched by the inflated amounts charged to one mortgagor as opposed to another. Either Defendants took unearned profits from a force-placed scheme that was applied uniformly across the class or they did not. *See, e.g., Williams,* 280 F.R.D. at 672 ( "The determination of the truth or falsity of the Plaintiffs' allegations that Wells Fargo and QBE engaged in a scheme to force-place insurance with inflated and excessive premiums will resolve an issue that is central to the validity of each one of the claims in one stroke.").

These questions are more than sufficient to satisfy the commonality requirement imposed by Rule 23(a)(2).

### C.   Plaintiffs' Claims Are Typical of Those of the Class.

Rule 23(a)(3) requires Plaintiffs to demonstrate that their claims are typical of those held by the proposed class. *See* Fed. R. Civ. P. 23(a)(3). Typicality and commonality are related, with commonality referring to "the group characteristics of the class as a whole" and typicality focusing on the named plaintiff's claims in relation to the class. *Terazosin Hydrochloride Antitrust Litig.,* 220 F.R.D. at 686 n.23. "Any atypicality or conflict between the named

Plaintiffs' claims and those of the class must be clear and must be such that the interests of the class are placed in significant jeopardy." *Cheney,* 213 F.R.D. at 491.

Plaintiffs' claims in this case arise from the same course of conduct and are based on the same legal theories as those brought on behalf of the proposed class.   Plaintiffs and every member of the proposed class had mortgage loans owned or serviced by Green Tree that were governed by common and materially uniform agreements.  (D.E. 52 ¶¶ 29, 55; Ex. A at 16; Ex. C (Jeska Depo.) at 231:3-19.)  As a result, once their voluntary policies lapsed, Plaintiffs and every other member of the proposed class were charged excessive amounts for FPI by Defendants. (Ex. A at 43-49.)  Plaintiffs and the class seek redress through common claims for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, unjust enrichment, tortious interference with a business relationship, and violations of the federal RICO and TILA statutes and the Florida FDUTPA statute.   (D.E. 52 ¶¶ 79-176).   Thus, Plaintiffs' claims and those belonging to the putative class arise from the same course of conduct and are based on the same legal theories, thereby satisfying Rule 23(a)(3).  *See, e.g., Ellsworth*, 2014 U.S. Dist. LEXIS 81646, at *49 (claims typical where "harms [we]re identical" and "plaintiffs had identical form contracts, and the policies were applied uniformly (including through uniform notices"); *Williams*, 280 F.R.D. at 673 (holding that the named plaintiffs were "typical of the class in that they were both charged and either paid or still owe Wells Fargo for the alleged excessive and inflated premiums for the force-placed property insurance"); *Hofstetter v. Chase Home Fin., LLC*, No. C 10-01313, 2011 U.S. Dist. LEXIS 38124, at *26-27 (N.D. Cal. Mar. 31, 2011) (typicality satisfied in force-placed insurance class action because plaintiffs' "claims likely differ[ed] from those of class members only as to damages and other immaterial factual details").

###### D.   Plaintiffs and Plaintiffs' Counsel Are Adequate Representatives.

To satisfy Rule 23(a)(4), the representative parties must "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4).  This requirement is satisfied when the class representatives have (1) no interests antagonistic to the rest of the class and (2) counsel who are "qualified, experienced, and generally able to conduct the proposed litigation." *Cheney,* 213 F.R.D. at 495.   "Adequate representation is presumed in the absence of contrary evidence." *Association for Disabled Ams., Inc. v. Amoco Oil Co.,* 211 F.R.D. 457, 464 (S.D. Fla. 2002).

### 1.   Plaintiffs Do Not Have Interests Antagonistic to the Rest of the Class.

Adequacy exists where class representatives share common interests with the class and seek the same type of relief for themselves as they do for other class members.  *See Tefel v. Reno,* 972 F. Supp. 608, 617 (S.D. Fla. 1997) ("Where the named plaintiffs in a class action are seeking the same type of relief for themselves as they seek for class members, the adequacy of representation requirement of Rule 23(a)(4) of the Federal Rules of Civil Procedure is satisfied."); *Kreuzfeld A.G. v. Carnehammar,* 138 F.R.D. 594, 600 (S.D. Fla. 1991).

The named Plaintiffs in this action have no interest that is antagonistic to those held by the rest of the class.  The proposed class definitions include only individuals who were subject to Defendants' force-placed insurance scheme.  *See* p. 6, *supra*.  All members of the class, including the named Plaintiffs, had insurance coverage forced on their homes and were charged inflated amounts that were added to the balance of their mortgage loans or deducted from escrow.  Thus, the critical issues in this case—the existence, implementation, and unlawfulness of Defendants' force-placed insurance scheme—are common to Plaintiffs' claims and the claims of the class.  None of the class members benefitted from Defendants' practice of overcharging for force-placed insurance; the class representatives and absent members would have been better served had the premiums imposed not been manipulated by the Defendants.  As Plaintiffs prove their own claims, they will also be proving the claims of many thousands of class members. Plaintiffs and the proposed class members share a common goal:  to recover the impermissible kickbacks covered by their insurance "premiums."  "If the Plaintiffs succeed, the benefits will inure to all class members."  *Tefel,* 972 F. Supp. at 617.

Plaintiffs have participated in discovery and been actively involved in this litigation from the beginning.  Plaintiffs' depositions took place on June 30 and July 1, 2015.  Plaintiffs have provided documents and responses to interrogatories, know what this case is about, and are willing and able to see this action to trial and beyond.  Accordingly, Plaintiffs have satisfied the requirements of Rule 23(a)(4).  *See Williams,* 280 F.R.D. at 673.

### 2.   Plaintiffs' Counsel Are Qualified, Experienced, and Generally Able to Conduct the Proposed Litigation.

The attorneys who seek to represent the plaintiff class in this case are highly qualified to serve as class counsel, and have served as lead and co-lead counsel in some of the largest class actions in the country as well as other complex commercial cases.  There are three law firms leading the representation of Plaintiffs in this action – Kozyak Tropin & Throckmorton LLP,

Podhurst Orseck, P.A., and Harke Clasby & Bushman LLP.  Plaintiffs seek to appoint these three firms as co-lead counsel.  These are the same three firms designated as Class Counsel for settlement purposes in *Braynen v, Nationstar Mortgage, LLC*, No. 14-cv-20726 (S.D. Fla.); *Saccoccio v. JPMorgan Chase Bank, N.A.*, No. 13-cv-21107 (S.D. Fla.); *Fladell v. Wells Fargo Bank, N.A.*, No. 13-cv-60721 (S.D. Fla.); *Diaz v. HSBC Bank (USA), N.A.*, No. 13-cv-21104 (S.D. Fla.); and *Hall v. Bank of America, N.A.*, No. 12-cv-22700 (S.D. Fla.), all force-placed insurance class actions against major mortgage lenders and either Assurant or QBE.  Moreover, the three firms have successfully prosecuted consumer class actions and are well respected in the communities that they serve.  "[T]he single most important factor considered by the courts in determining the quality of the representative's ability and willingness to advocate the cause of the class has been the caliber of the plaintiff's attorney."  1 NEWBERG ON CLASS ACTIONS 3d (1992) § 3.24 at 3-133 n.353.  *See also Griffin v. Carlin*, 755 F. 2d 1516, 1533 (11th Cir. 1985) (question of adequacy of plaintiffs most often "involve[s] questions of whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation and of whether plaintiffs have interests antagonistic to those of the rest of the class").  The firms representing Plaintiffs have overseen the litigation strategy, the briefing and argument of motions, including briefing and defeating Defendants' motions to dismiss, and the vigorous pursuit of discovery.

## II.    PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23(b)(3).

In addition to meeting the four requirements of Rule 23(a), a plaintiff seeking class certification must satisfy one of the subsections of Rule 23(b).  *Cheney*, 213 F.R.D. at 489. Plaintiffs here seek certification under Rule 23(b)(3).  Under Rule 23(b)(3), certification is appropriate if (1) common questions of law or fact predominate over questions affecting only individual class members and (2) class treatment is superior to other methods of adjudication. *See* Fed. R. Civ. P. 23(b)(3).  Each requirement is easily satisfied here.

### A.    Common Questions of Law and Fact Predominate Because Legal and Factual Questions Will Be Resolved with Proof Common to Plaintiffs and the Class.

For common questions of law or fact to predominate over individualized questions, "the issues in the class action that are subject to generalized proof, and [are] thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof."  *Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. at 694 (citation omitted).

"Common questions need only predominate; they need not be dispositive of the litigation." *Id.* (citation omitted). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Checking Overdraft Litig.*, 275 F.R.D. at 676 (citation omitted); *see, e.g., Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 725 (11th Cir. 1987). The Eleventh Circuit has articulated the test for predominance as follows:

> [I]f common issues truly predominate over individualized issues in a lawsuit, then the addition or subtraction of any of the plaintiffs to or from the class [should not] have a substantial effect on the substance or quantity of evidence offered … If … the addition of more plaintiffs leaves the quantum of evidence introduced by the plaintiffs as a whole relatively undisturbed, then common issues are likely to predominate.

*Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004).

Here, "irrespective of the individual issues which may arise, the focus of the litigation concerns the alleged common course of unfair conduct embodied in [Defendants'] scheme to" manipulate force-placed insurance charges to Plaintiffs. *Checking Overdraft Litig.*, 275 F.R.D. at 676 (citation and internal quotations omitted). As a result, the evidence that Plaintiffs will proffer to prove their claims arising from Defendants' force-placed insurance scheme is common to all class members. Plaintiffs' proof will be the same regardless of class size or composition; indeed, a finding of liability will require *no* proof regarding individual borrowers' properties or types of mortgage agreements with Green Tree.

The evidence that Plaintiffs will offer will include testimony and documents showing, *inter alia*, that: (1) the terms and obligations of Green Tree's mortgage contracts relating to force-placed insurance were materially similar and uniform across the class (Ex. A at 16; Ex. C (Jeska Depo.) at 231:3-19); (2) Green Tree never purchases or writes insurance for an individual borrower, but instead, purchases a group master policy from each insurer that provides continuous coverage for all loans held by Green Tree and automatically provides insurance coverage in the event any borrower/loan in the portfolio fails to provide required evidence of required insurance, (Ex. A at 18-19. 43-44, ); (3) the process by which ARIC (posing as Green Tree) notifies borrowers that insurance will be placed on their homes is fully automated, as is the process by which the insurers determine the premium, (*id.*); and (4) Green Tree collects

363085

kickbacks from ARIC in the form of *inter alia* unearned commissions and subsidized loan servicing programs, which are applied uniformly nationwide, and improperly passes their costs on to borrowers regardless of individual  characteristics of their properties or loans  (Ex. A at 8-9, 44-49).

Damages are readily calculable on class-wide basis and susceptible to common proof as well.  Although certain individualized damages inquiries may be necessary, any that arise will not be sufficiently significant to defeat class certification.  *See, e.g., Klay*, 382 F.3d at 1260 ("It is primarily where there are significant individualized questions going to liability that the need for individualized assessments of damages is enough to preclude 23(b)(3) certification."); *Allapattah Servs. v. Exxon Corp.,* 333 F.3d 1248, 1261 (11th Cir. 2003) ("numerous courts have recognized that the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate")l; *In re Terazosin,* 203 F.R.D. at 559 (class certified where plaintiffs' offered "algebraic formula" for computation of damages).

To support class certification, Plaintiffs need only identify "plausible statistical or economic methodologies to demonstrate impact on a class-wide basis."  *Klay,* 382 F.3d at 1259. If damages may be calculated according to some formula "or other easy or essentially mechanical method[], [then] the fact that damages must be calculated on an individual basis is no impediment to class certification."  *Id.*  Plaintiffs' expert, Birny Birnbaum, sets forth in his Report the straightforward methodology by which the class's damages may be assessed.  (*See* Ex. A at 44-49.)  He explains that the appropriate measure of damages for all class members is the percentage of unreasonable expenses in the FPI charges.  (*Id.*)  Through a review of Defendants' business records, the damage to class members from the inclusion of "commissions" and subsidized servicing expenses in amounts charged to borrowers can also be identified and quantified as a percentage of the amounts charged them for force-placed insurance. (*Id.*)  This is the measure of economic injury and damages suffered by class members as a result of Defendants' wrongful practices.  (*Id.*)  Damages to each class member will be measured by applying the percentage of unreasonable expenses to the amount charged the class member for force-placed coverage during the class period. (*Id.*)  In calculating these damages, there will be no need to refer to or rely upon rate filings, individual borrower characteristics, or specific state laws. (*Id.*) The methodology Mr. Birnbaum describes in his report has been approved by at least

three courts hearing force-placed insurance cases, including Judge Scola in *Williams*.  (*Id*. at 49-51.)

Defendants' "challenged practice is a standardized one applied on a routine basis to all customers" whose insurance has lapsed.  *Checking Overdraft Litig.*, 275 F.R.D. at 677.  As a result, individual issues will not predominate over the "pervasive commonality" of the implementation of the scheme and its adverse impact on tens of thousands of borrowers.  *Id.*

**B.      A Class Action Is Superior to Adjudication of Individual Claims.**

Federal district courts analyzing the superiority requirement of Rule 23(b) consider four factors to identify the superior method of adjudication: (1) the interest of individual class members in controlling the prosecution and defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against any members of the class; (3) the desirability of undesirability of concentrating litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action.  *See* Fed. R. Civ. P. 23(b)(3).  Plaintiffs and the proposed class satisfy these requirements.

There is nothing to suggest that individual class members would have any interest in prosecuting separate actions against Green Tree.

> Since the damage amounts allegedly owed to each individual plaintiff are relatively low—especially as compared to the costs of prosecuting the types of claims in this case involving complex, multi-level business transactions between sophisticated Defendants—the economic reality is that many of the class members would never be able to prosecute their claims through individual lawsuits.

*Williams*, 280 F.R.D. at 675; *see* 4 NEWBERG ON CLASS ACTIONS § 21.14 (1992) (individuals only have an interest in prosecuting individual claims that are large enough to justify expending attorneys' fees and litigation costs).  *See, e.g., Grossman v. First Pa. Corp.*, No. 89-9234, 1991 WL 222071 at *7 (E.D. Pa. Oct. 23, 1991).  Thus, if this matter is not certified, there will likely be no recourse for many thousands of homeowners and Defendants' improper practices would continue unabated.

The second superiority factor also favors class certification.  Plaintiffs' counsel are aware of four similar FPI actions involving Green Tree. In *Rapp .v Green Tree Servicing, LLC*, No. 12-cv-2496 (D. Minn.) the court denied the plaintiff's motion for class certification.  Another action, *Johnson v. Green Tree  Servicing, LLC*, No. 3:15-cv-18 (N.D. Miss.), was dismissed with prejudice.  One action, *Purifoy v. Walter Investment Management Corp., et al*, No. 13-cv-937

21

(S.D.N.Y.) has been essentially stayed since August 2013 pending the court's decision on the motions to dismiss.  And the final case, *Longest v. Green Tree Servicing*, *LLC et al*, No. 2:14-cv-08150 (N.D. Cal.), is currently pending in the Central District of California but only seeks to certify two state subclasses and not a nationwide case as here.

Litigating Plaintiffs' claims in this forum will serve judicial economy and the convenience of the parties, thus satisfying the third superiority requirement.  The Eleventh Circuit recognizes that where, as here, a plaintiff establishes that common issues predominate over individualized issues, the claims of multiple parties should be litigated together in a single forum.  *See Klay*, 382 F.3d at 1270.  This consideration carries particular weight where, as here, "the defendants are corporate behemoths with a demonstrated willingness and proclivity for drawing out legal proceedings for as long as humanly possible and burying their opponents in paperwork and filings."  *Id.*

The fourth superiority factor focuses on "practical problems that may render the class action format inappropriate for a particular lawsuit[,]" or manageability.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974).  Litigation in this forum will not present manageability problems more significant than those that would arise from many thousands of individual actions.  Plaintiffs do not foresee manageability problems of any significance, and certainly not any that would render a class action inferior to the litigation of proposed class members' claims in individual actions.  Plaintiffs have already demonstrated that this case can proceed efficiently, moving from the initial pleading to briefing on class certification in just over one year.

<u>**CONCLUSION**</u>

Plaintiffs respectfully request that the Court certify the proposed classes.

Respectfully submitted this 6th day of July,

*/s/ Adam M. Moskowitz*

| | |
|---|---|
| Adam M. Moskowitz, Esq. | Aaron S. Podhurst, Esq. |
| Florida Bar No. 984280 | Florida Bar No. 63606 |
| amm@kttlaw.com | apodhurst@podhurst.com |
| Rachel Sullivan, Esq. | Peter Prieto, Esq. |
| Florida Bar No. 815640 | Florida Bar No. 501492 |
| rs@kttlaw.com | pprieto@podhurst.com |
| Robert J. Neary, Esq. | Matthew Weinshall |
| Florida Bar No. 81712 | Florida Bar No. 84783 |
| rn@kttlaw.com | mweinshall@podhurst.com |
| **KOZYAK TROPIN &** | **PODHURST ORSECK, P.A.** |

**THROCKMORTON**
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
Telephone:  (305) 372-1800
Facsimile:   (305) 372-3508
*Counsel for Plaintiffs*

City National Bank Building
25 West Flagler Street, Suite 800
Miami, Florida 33130
Telephone: 305-358-2800
Facsimile: 305-358-2382
*Counsel for Plaintiffs*

Lance A. Harke, Esq.
Florida Bar No. 863599
lharke@harkeclasby.com
Sarah Engel, Esq.
Florida Bar No. 991030
sengel@harkeclasby.com
Howard M. Bushman, Esq.
Florida Bar No. 0364230
hbushman@harkeclasby.com
**HARKE CLASBY & BUSHMAN LLP**
9699 NE Second Avenue
Miami Shores, Florida 33138
Telephone:     (305) 536-8220
Facsimile:      (305) 536-8229
*Counsel for Plaintiffs*

23

363085

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true copy of the foregoing was filed with the Court under seal and served by email on all counsel of record on the 6th day of July, 2015 and a redacted copy was filed via CM/ECF and served on all counsel of record.

By:  <u>*/s/ Adam M. Moskowitz*</u>

24

363085