# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 14-CV-21384-MORENO

RENATA CIRCEO-LOUDON, LOUIS J.
CIRCEO, DELORES SANTOS FAVELA,
CARLENE LONGEST, JUNXIU CAI,
and LIFEN CAI on behalf of themselves and
all others similarly situated,

        Plaintiffs,

v.

GREEN TREE SERVICING, LLC, GREEN TREE
INSURANCE AGENCY, INC., and
AMERICAN RELIABLE INSURANCE
COMPANY,

        Defendants.

**CLASS ACTION**
**JURY DEMAND**

_____/

## STIPULATION AND SETTLEMENT AGREEMENT

IT IS HEREBY STIPULATED AND AGREED, by, between, and among Plaintiffs
Renata Circeo-Loudon, Louis J. Circeo, Delores Santos Favela, Carlene Longest, Junxiu "Alex"
Cai, and Lifen "Regina" Cai, on behalf of themselves and all Settlement Class Members as
defined herein, and Green Tree Servicing LLC (n/k/a Ditech Financial LLC) and Green Tree
Insurance Agency, Inc. [collectively "Green Tree"], and American Reliable Insurance Company
("ARIC"), American Security Insurance Company ("ASIC"), Standard Guaranty Insurance
Company ("SGIC"), Voyager Indemnity Insurance Company ("VIIC"), American Bankers
Insurance Company of Florida ("ABIC") (ARIC, ASIC, SGIC, ABIC, and VIIC are collectively
referred to herein as the "Assurant Defendants"),[1] that the lawsuit originally captioned *Renata
Circeo-Loudon and Louis J. Circeo v. Green Tree Servicing, LLC, Green Tree Insurance*

_____

[1] The Parties refer to all defendants collectively as "Defendants."

*Agency, Inc. and American Reliable Insurance Company;* Case No. 1:14-cv-21384, in the United States District Court for the Southern District of Florida (the "Circeo Litigation" or the "Litigation") and the matters raised by, or which could have been raised by, the Circeo Litigation are settled, compromised, and dismissed on the merits and with prejudice on the terms and conditions set forth in this Settlement Agreement and the Release set forth herein, subject to the approval of the Court.

## 1.    RECITALS

1.1.    Class Counsel had been investigating and litigating Lender Placed Insurance ("LPI") class cases against the Assurant Defendants in the Southern District of Florida for over three years prior to filing the complaint in the Circeo Litigation.  Class Counsel advises that over 30 depositions have been taken in those cases, and well over a million documents have been produced and reviewed.

1.2.    On April 17, 2014, Plaintiffs filed this putative nationwide class action.

1.3.    In the Circeo Litigation, Plaintiffs asserted claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, breach of fiduciary duty, violations of the Truth in Lending Act, tortious interference with a business relationship, and violations of the Racketeer Influenced and Corrupt Organizations Act.

1.4.    On June 23, 2014, in response to the Complaint, Defendants filed, *inter alia*, extensive motions to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6).  On August 25, 2014 the court granted Defendant American Reliable Insurance Company's Motion to Dismiss.

1.5.    On August 26, 2014, Plaintiff moved for clarification of the dismissal order.  The Court held a hearing on Plaintiffs' motion for clarification on September 26, 2014, and granted

Plaintiffs leave to amend the complaint. On October 16, 2014, Plaintiffs filed the First Amended Complaint.

1.6     On October 31, 2014, the Defendants moved to dismiss Plaintiffs' First Amended Complaint. The Court heard arguments of Defendants' motions on March 3, 2015, and denied the motions to dismiss on April 27, 2015.

1.7     On May 15, 2015, the Court set this matter for trial on November 30, 2015. The Court also set a mediation deadline of September 30, 2015.

1.8.    After the order setting trial, the Parties engaged in voluminous discovery with Defendants completing productions which started prior to the stay and producing thousands of additional pages of documents. This was in addition to the more than two million pages of documents previously produced in other lender placed litigation involving the Assurant Defendants. Plaintiffs deposed Defendants' representatives. Defendants took the depositions of the Plaintiffs and subpoenaed documents from third-parties.

1.9     On July 6, 2015, Plaintiffs filed their motion for class certification with extensive exhibits and an expert report. The motion for class certification is still pending before the Court.

1.10    On September 11, 2015, a formal mediation of this matter with Rodney Max as the mediator ("Circeo Mediation") was held. In advance of and during the Circeo Mediation, Defendants provided Plaintiffs and Class Counsel additional information concerning Defendants' LPI programs, including aggregate LPI premium information across the country for all programs.

1.11.   The Circeo Mediation involved an in-person mediation session, numerous pre-mediation conference calls, and the exchange of additional extensive written information concerning the claims raised in the Circeo Litigation. It also included the collection, production, and review of data concerning LPI Policies.

1.12.     The Parties reached a settlement in principle at the Circeo Mediation, and the Parties' counsel signed off on a settlement outline that identified the material terms for this Settlement Agreement.

1.13.     On October 9, 2015, Plaintiffs filed a First Amended Complaint adding the claims of Plaintiffs Delores Santos Favela, Carlene Longest, Junxiu "Alex" Cai, and Lifen "Regina" Cai, adding ASIC, SGIC, ABIC, and VIIC as defendants, and conforming the definition of the Class therein to that appearing in Section 3 below.  Pending approval of this Settlement by the Court, Plaintiffs Longest and the Cais have agreed to stay their concurrent action styled *Longest v. Green Tree Servicing LLC et al.*, Case No.: 2:14-cv-08150-CAS (RZx), in and for the United States District Court for the Central District of California (hereinafter the "Longest Litigation"). The Longest Litigation plaintiffs are represented by Class Counsel as well as Hart Robinovitch and Caleb Marker of Zimmerman Reed LLP, who support Class Counsel and the approval of this settlement.

1.14.     Class Counsel has significant experience litigating LPI claims, having represented plaintiffs in numerous putative class actions brought in the Southern District of Florida, including *Williams v. Wells Fargo Bank, N.A.*, No. 11-cv-21233, *Herrick v. JP Morgan Chase Bank, N.A.*, No. 13-21107, *Kunzelmann v. Wells Fargo Bank, N.A.*, No. 11-cv-81373, *Hall v. Bank of America, N.A.*, No. 12-cv-22700, *Diaz v. HSBC Bank USA, N.A.*, No. 13-cv-21104, *Popkin v. Citibank, N.A.*, 13-cv-60722, *Fladell v. Wells Fargo Bank, N.A.*, No. 13-cv-60721, *Braynen v. Nationstar Mortgage LLC*, No. 14-cv-20726; *Lee v. Ocwen Loan Servicing LLC*, No. 14-cv-60649 (J. Goodman); *Jackson v. U.S. Bank, N.A.*, No. 14-cv-21252; *Montoya v. PNC Bank, N.A.*,, Case No. 1:14-cv-20474; *Soler v. IndyMac Mortgage*, No. 14-cv-22541; *Almanzar v. Select Portfolio Servicing, Inc.*, No. 14-cv-22586, *Wilson, et al. v. EverBank, et al.*, No. 1:14-

cv-22264-Bloom, and the Circeo Litigation. Many of the above-styled cases name the Assurant Defendants as defendants. Based on this experience, Class Counsel believes that the Circeo Litigation has significant merit and that the evidence developed supports Plaintiffs' claims. Class Counsel recognizes and acknowledges, however, that prosecuting the Circeo Litigation through fact and expert discovery, class certification, dispositive motions, trial, and appeals will involve considerable uncertainty, time, and expense.

1.15. Class Counsel has concluded that it is in the best interests of the Class as a whole that the claims asserted in the Circeo Litigation be resolved on the terms and conditions set forth in this Agreement. After extensive consideration and analysis of the factual and legal issues presented in the Circeo Litigation, and extensive mediation sessions, Class Counsel has reached the conclusion that the substantial benefits the Settlement Class Members will receive as a result of this Settlement are a very good result in light of the risks and uncertainties of continued litigation, including the pending motion for class certification, the expense that would be necessary to prosecute the Circeo Litigation through trial and any appeals that might be taken, and the likelihood of success at trial.

1.16. Defendants have denied, and continue to deny each and every allegation of liability, wrongdoing, and damages, as they have substantial factual and legal defenses to all claims and class allegations in the Circeo Litigation. Defendants have always maintained, and continue to maintain, that they have acted in accordance with all applicable agreements and governing law. Nonetheless, Defendants have concluded that because the continuation of the Circeo Litigation would be protracted and expensive, it is desirable that the Circeo Litigation be fully and finally settled on a class-wide basis in the manner and upon the terms set forth in this Agreement.

1.17.   Without admitting any liability or wrongdoing whatsoever, Defendants agree to the terms of this Agreement, provided that all Released Claims are settled, compromised, and released, in order to resolve all issues relating to the subject matter of the Circeo Litigation.

## 2.   DEFINITIONS

As used herein, the following terms have the meanings set forth below.

2.1.   "Administrator" or "Settlement Administrator" means a third-party agent or administrator selected by Defendants (with the consent of the Class Counsel, which consent shall not be unreasonably withheld) to help implement and effectuate the terms of this Settlement Agreement.

2.2.   "Affiliate" of an entity means any person or entity which controls, is controlled by, or is under common control with such entity.

2.3.   "Agreement" or "Settlement Agreement" means this Stipulation and Settlement Agreement, including all exhibits thereto.

2.4.   "Attorneys' Fees and Expenses" means such funds as may be awarded to Class Counsel to compensate them (and all other attorneys for Named Plaintiffs or the Settlement Class) for their fees and all expenses incurred by Named Plaintiffs or Class Counsel in connection with the Circeo Litigation or the Longest Litigation.

2.5.   "Borrowers Who Were Charged But Did Not Pay And Still Owe Their LPI Premium" refers to those Settlement Class Members who were charged a Net Premium for an LPI Policy (hazard (including wind-only), flood, or flood gap) by Green Tree during the Settlement Class Period and who still owe some or all of those charges, but who did not make one or more full monthly mortgage loan payment(s) to Green Tree after either: (a) their Existing Escrow Account, if any, was adjusted to charge the increased premium for the LPI Policy; (b)

their Created Escrow Account, if any, was charged the increased premium for the LPI Policy; or (c) the payment was otherwise increased to reflect an amount for reimbursement of the amount charged for the LPI Policy premium where no escrow account existed.  This definition captures all Settlement Class Members who were charged for an LPI Policy by Green Tree during the Settlement Class Period and who still owe those charges, but who are not Borrowers Who Paid Their LPI Premium (as defined in Section 2.6 below).

a.    "Existing Escrow Account" refers to an escrow account for a borrower that existed prior to the placement of the LPI Policy.  Green Tree sent notice informing the borrower that the Existing Escrow Account was being adjusted to reflect the charge for the LPI Policy.

b.    "Created Escrow Account" refers to an escrow account that was created for a borrower who did not have an escrow account prior to the placement of the LPI Policy, in order for the borrower to be charged for the LPI Policy, where Green Tree sent notice informing the borrower that the Created Escrow Account had been established to reflect the charge for the LPI Policy.

2.6.    "Borrowers Who Paid Their LPI Premium" refers to those Settlement Class Members who were charged a Net Premium for an LPI Policy (hazard (including wind-only), flood, or flood gap) by Green Tree during the Settlement Class Period and who made one or more full monthly mortgage loan payment(s) to Green Tree after either:  (a) their Existing Escrow Account, if any, was charged for the LPI Policy; (b) their Created Escrow Account, if any, was charged for the LPI Policy; or (c) the payment was otherwise increased to reflect an amount for reimbursement of the amount charged for the LPI Policy premium where no escrow account existed.

2.7. "Case Contribution Award" means compensation for the Named Plaintiffs for their time and effort undertaken in the Circeo Litigation.

2.8. "Claim" means a written request for Claim Settlement Relief submitted by a Settlement Class Member to the Settlement Administrator, pursuant to the Claim Form Instructions in substantially the form of Exhibit B to this Agreement or as ultimately approved by the Court, using a Claim Form in substantially the form of Exhibit C to this Agreement or as ultimately approved by the Court.

2.9. "Claim Deadline" means the last date by which a Claim submitted to the Settlement Administrator by a Settlement Class Member for Claim Settlement Relief must be postmarked, which shall be set by mutual agreement of the Parties to occur on a date no later than sixty (60) days after the Final Settlement Date. All Claims postmarked on or before the Claim Deadline shall be timely, and all Claims postmarked after the Claim Deadline shall be untimely and barred from entitlement to any Claim Settlement Relief.

2.10. "Affiliated with Green Tree" means controlled by, or under common control with or of, Green Tree directly or indirectly, through one or more intermediaries. The term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract or otherwise, and the terms "controlled" and "controlling" have meanings correlative thereto.

2.11. "Claimant" means any Settlement Class Member who submits a Claim pursuant to this Settlement Agreement.

2.12. "Claim Form" means the documents in the form attached as Exhibit C to this Agreement and/or as ultimately approved by the Court.

2.13.   "Claim Form Instructions" means the documents in the form attached as Exhibit B to this Agreement and/or as ultimately approved by the Court.

2.14.   "Claim Settlement Relief" means the cash award payment or credit to be made to Settlement Class Members who submit properly completed and timely Claim Forms to the Settlement Administrator pursuant to the Claim Form Instructions, and who qualify for such relief under this Settlement Agreement.

2.15.   "Class Counsel" means the law firms of Kozyak, Tropin, & Throckmorton, P.A., Podhurst Orseck, P.A., and Harke Clasby & Bushman LLP.  The Class is also represented by the law firm of Zimmerman Reed LLP as additional Counsel for the Class.

2.16.   "Class Notice" or "Notice" means the program of notice described in Section 6 of this Agreement to be provided to Settlement Class Members, including the Mail Notice and Internet site, which will notify Settlement Class Members, among other things, about their rights to opt out or object to the Settlement, the preliminary approval of the Settlement, the manner by which to submit a Claim, and the scheduling of the Final Approval Hearing.

2.17.   "Court" means the United States District Court for the Southern District of Florida.

2.18.   "Days" means calendar days, except that, when computing any period of time prescribed or allowed by this Agreement, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  Further, when computing any period of time prescribed or allowed by this Agreement, the last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, Sunday, or legal holiday.  All calculations of days and times shall be adjusted to permit compliance by Defendants with the

Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711-1715, including the notifications of appropriate regulators under 28 U.S.C. § 1715(b) and expiration of the 90-day review period in 28 U.S.C. § 1715 before the Fairness Hearing is held in the Litigation to review and approve the Settlement.

2.19.   "Defendants" mean all named defendants in the Circeo Litigation and the Longest Litigation, including Green Tree and the Assurant Defendants.

a.      "Green Tree" means Green Tree Servicing LLC, and Green Tree Insurance Agency, Inc.

b.      "Assurant Defendants" means Assurant, Inc., American Reliable Insurance Company, American Security Insurance Company, Standard Guaranty Insurance Company, Voyager Indemnity Insurance Company, and American Bankers Insurance Company of Florida.

c.      Pursuant to Section 14.1 of this Settlement Agreement, Circeo filed an amended complaint prior to the Application for Preliminary Approval that adds ASIC, VIIC, SGIC, and ABIC as party defendants to the Circeo Litigation and adds Delores Santos Favela, Carlene Longest, Junxiu "Alex" Cai, and Lifen "Regina" Cai as party plaintiffs. The Settling Parties agree that these defendants shall be considered a "Defendant" for purposes of this Agreement.

2.20.   "Defense Counsel" means Defendants' counsel of record in the Circeo Litigation.

2.21.   "Final" with respect to the Judgment or to any award of Attorneys' Fees and Expenses means that the time for appeal or writ review has expired or, if an appeal or petition for review is taken and dismissed or the Settlement (or award of Attorneys' Fees and Expenses) is affirmed, the time period during which further petition for hearing, appeal, or writ of certiorari

can be taken has expired. If the Judgment is set aside, modified, or overturned by the Court or on appeal, and is not fully reinstated on further appeal, the Judgment shall not become Final.

2.22. "Final Approval" means the entry of the Judgment approving the Settlement after the Final Approval Hearing is conducted.

2.23. "Final Approval Hearing" means the hearing held by the Court to determine whether the terms of this Agreement are fair, reasonable, and adequate for the Settlement Class as a whole, whether the Settlement should be granted final approval, and whether the Judgment should be entered.

2.24. "Final Settlement Date" means the date on which the Judgment in this case becomes Final (as defined in Section 2.21). If no appeal has been taken from the Judgment, the Final Settlement Date means the date on which the time to appeal has expired. If any appeal has been taken from the Judgment, the Final Settlement Date means the date on which all appeals, including petitions for rehearing, petitions for rehearing *en banc*, and petitions for certiorari or any other form of review, have been finally disposed of in a manner that affirms the Judgment.

2.25. "Judgment" means the final Order and Judgment to be entered by the Court pursuant to the Settlement and in substantially similar form as Exhibit E.

2.26. "Last Known Coverage Amount" refers to the amount of coverage that is available and known to Green Tree (or available and known to any of Green Tree's agents for tracking voluntary insurance or placing LPI) from the borrower's prior voluntary insurance policy on the property securing the loan.

2.27. "Lender-Placed Insurance" or "LPI" means the placement of hazard, flood, flood gap, or wind-only insurance pursuant to a mortgage loan agreement, home equity loan

agreement, or home equity line of credit serviced by Green Tree to cover a borrower's failure to maintain the required insurance coverage on the Residential property securing the loan.

2.28. "Litigation" or "Circeo Litigation" means the action originally captioned *Renata Circeo-Loudon and Louis J. Circeo v. Green Tree Servicing, LLC, Green Tree Insurance Agency, Inc. and American Reliable Insurance Company;* Case No. 1:14-cv-21384, in the United States District Court for the Southern District of Florida.

2.29. "LPI Policy" means a lender-placed residential hazard, flood, flood gap or wind-only insurance policy for a "Site Built Residential Property" placed pursuant to a mortgage loan agreement (excluding reverse mortgages), home equity loan agreement, or home equity line of credit serviced by the Green Tree Defendants to cover a borrower's failure to maintain the required insurance coverage on the residential property securing the loan. "Site Built Residential Property" shall mean any property with site built improvements constructed entirely or largely on site; that is – built on the site which it is intended to occupy upon its completion, rather than in a factory or similar facility. Site Built Residential Property does not include modular-type dwellings (mobile and modular homes) that are assembled in a factory and transported to the site entirely or mostly complete whether or not permanently affixed to real property.

2.30. "Mail Notice" means the "Notice" that is mailed by the Settlement Administrator to Settlement Class Members, in substantially the form attached as Exhibit A to this Agreement and/or as ultimately approved by the Court. Mail Notice shall be mailed not less than ninety (90) days before the date set by the Court for the Final Approval Hearing.

2.31. "Named Plaintiffs" or "Plaintiffs" means Renata Circeo-Loudon, Louis J. Circeo, Delores Santos Favela, Carlene Longest, Junxiu "Alex" Cai, and Lifen "Regina" Cai.

2.32. "Net Premium" means the amount of premium charged to a Settlement Class Member for an LPI Policy during the Settlement Class Period less any refund paid or credited to the Settlement Class Member.

2.33. "Notice and Administrative Costs" means the reasonable and authorized costs and expenses of disseminating and publishing the Class Notice in accordance with the Preliminary Approval Order, and all reasonable and authorized costs and expenses incurred by the Settlement Administrator in administering the Settlement, including but not limited to costs and expenses associated with assisting Settlement Class Members, processing claims, escrowing funds, and issuing and mailing Settlement Payments. Notice and Administrative Costs do not include costs associated with Class Counsel's interactions with the Settlement Administrator, as detailed in Section 7.4.

2.34. "Objection Deadline" means the date identified in the Preliminary Approval Order and Class Notice by which a Settlement Class Member must serve written objections, if any, to the Settlement in accordance with Section 12 of this Agreement to be able to object to the Settlement. The Objection Deadline shall be no later than thirty (30) days prior to the Final Approval Hearing or as the Court may otherwise direct.

2.35. "Opt-Out Deadline" means the date identified in the Preliminary Approval Order and Class Notice by which a Request for Exclusion must be filed in writing with the Settlement Administrator in accordance with Section 11 of this Agreement in order for a Settlement Class Member to be excluded from the Settlement Class. The Opt-Out Deadline shall be no later than thirty (30) days prior to the Final Approval Hearing or as the Court may otherwise direct.

2.36. "Parties" means Named Plaintiffs and Defendants in the Litigation.

2.37.   "Preliminary Approval Order" means the order in substantially similar form as Exhibit D and providing for, among other things, preliminary approval of the Settlement as fair, reasonable, and adequate; preliminary certification of the Settlement Class for settlement purposes only; dissemination of the Class Notice to the Settlement Class; and finding that the proposed Class Notice is reasonably calculated to apprise the Settlement Class Members of the pendency of the Circeo Litigation, the material terms of the proposed Settlement, and the Settlement Class Members' options and rights with respect thereto.

2.38.   "Preliminary Approval Application" means Named Plaintiffs' motion for the Court to preliminarily approve the Settlement and to enter the Preliminary Approval Order, including all exhibits and documents attached thereto.  Named Plaintiffs' Preliminary Approval Application shall be filed within fourteen (14) days after this Agreement is signed.

2.39.   "Premium" means the amount charged to a borrower by Green Tree for an LPI Policy.

2.40.   "Refund" means the amount of money paid or credited to a borrower when an LPI Policy is cancelled.

2.41.   "Release" or "Releases" means the releases of all Released Claims by the Releasing Persons against the Released Persons, as provided for in Section 10 of the Settlement Agreement.

2.42.   "Released Claims" means all claims, actions, causes of action, law suits, debts, sums of money, payments, obligations, reckonings, promises, damages, penalties, attorney's fees and costs, liens, judgments, demands, and any other forms of liability released pursuant to Section 10 of the Settlement Agreement.

2.43.   "Released Persons" means, only with respect to Released Claims:   (a) Defendants and each of their respective divisions, parents, subsidiaries, predecessors, investors, parent companies, and Affiliates, whether past or present, any direct or indirect subsidiary of any of Defendants and each of their respective divisions, parents, subsidiaries, predecessors, investors, parent companies, and Affiliates, whether past or present, and all of the officers, directors, employees, agents, brokers, distributors, representatives, and attorneys of all such entities, including but not limited to Green Tree, Assurant, Inc., ASIC, SGIC, ABIC, VIIC, and their Affiliates; (b) any other insurance carriers that issued or may have issued LPI for Green Tree insuring real property owned by any Settlement Class Member; and (c) any trustee of a mortgage securitization trust which included loans made to any Settlement Class Member, including, but not limited to, any direct or indirect subsidiary of any of them, and all of the officers, directors, employees, agents, brokers, distributors, representatives, and attorneys of all such entities.

2.44.   "Releasing Persons" means Named Plaintiffs, all Settlement Class Members who do not properly and timely opt out of the Settlement, and their respective family members, heirs, administrators, successors, and assigns.

2.45.   "Request for Exclusion" means a written request from a Settlement Class Member that seeks to exclude the Settlement Class Member from the Settlement Class and that complies with all requirements in Section 11 of this Agreement.

2.46.   "Settlement" or "Stipulation of Settlement" means the settlement set forth in this Agreement.

2.47. "Settlement Class" means all members of the class of borrowers in the Circeo Litigation that will be certified by the Court for settlement purposes as more fully described in Section 3.1 herein.

2.48. "Settlement Class Member" means any member of the Settlement Class.

2.49. "Settlement Class Period" means the period of time defined in Section 3.2 below.

2.50. "Settlement Website" means the Internet site created by the Settlement Administrator pursuant to Section 6.2 of this Agreement to provide information about the Settlement, which shall have the Uniform Resource Locator of www.CirceoSettlementInfo.com.

2.51. "Settling Parties" means, collectively, Defendants, Named Plaintiffs, and all Releasing Persons.

3. **CLASS DEFINITION, CLASS PERIOD AND CONDITIONS AND OBLIGATIONS RELATING TO THE EFFECTIVENESS OF THE SETTLEMENT**

3.1. The "Settlement Class" shall be as follows:

(a)     The "Class" shall include all borrowers in the United States who, within the Settlement Class Period (as defined in Section 3.2 below), were charged by the Green Tree Defendants under a LPI Policy, and who, within the Class Period, either (i) paid to the Green Tree Defendants the Net Premium for that LPI Policy or (ii) did not pay to and still owe the Green Tree Defendants the Net Premium for that LPI Policy. Excluded from the Class are: (i) individuals who are or were during the Class Period officers or directors of the Defendants in the Action or any of the Defendants' respective affiliates; (ii) any justice, judge, or magistrate judge of the United States or any State, their spouses, and persons within the third degree of relationship to either of them, or the spouses of such persons; (iii) borrowers who only had an LPI Policy that was cancelled in its entirety such that any premiums charged and/or collected were fully refunded to the borrower or the borrower's escrow account; and, (iv) all borrowers who file a timely and proper request to be excluded from the Class.

3.2     The "Settlement Class Period" shall commence on January 1, 2008 and shall continue through and including the date of the Preliminary Approval Order preliminarily approving the Settlement.

3.3     This Settlement Agreement is expressly contingent upon the satisfaction, in full, of the material conditions set forth below.

3.4.    Condition No. 1:  District Court Approval.  The Settlement must be approved by the Court in accordance with the following steps:

3.4.1.  Application for Preliminary Approval of Proposed Settlement, Class Certification, and Class Notice.  After good faith consultation with counsel for Defendants, Class Counsel will present a Preliminary Approval Application to the Court within 7 (seven) days of this Agreement.   The Preliminary Approval Application shall include a Class Notice, in substantially similar form as Exhibit A, and a Preliminary Approval Order, in substantially similar form as Exhibit D.   The Settling Parties shall, in good faith, take reasonable steps to secure expeditious entry by the Court of the Preliminary Approval Order and shall request that the Court schedule a Final Approval Hearing no earlier than ninety (90) days after the service of the required notices under 28 U.S.C. § 1715.

3.4.2.  Settlement Class Certification.   In connection with the proceedings on Preliminary and Final Approval of the proposed Settlement, the Named Plaintiffs shall seek orders (preliminary and final, respectively) certifying the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure for purposes of this Settlement only.

3.4.3.  Entry of Preliminary Approval Order.  The Court shall enter a Preliminary Approval Order in substantially similar form as Exhibit D, which shall, among other things:

a.      Certify for purposes of settlement a nationwide Settlement Class, approving the Named Plaintiffs as class representatives and appointing Class Counsel, pursuant to Fed. R. Civ. P. 23;

b.　　Preliminarily approve the Settlement as fair, reasonable and adequate;

c.　　Order the issuance of Class Notice to the Settlement Class, and determine that such Notice complies with all legal requirements, including, but not limited to, the Due Process Clause of the United States Constitution;

d.　　Schedule a date and time for a Final Approval Hearing to determine whether the Preliminary Approval Order should be finally approved by the Court;

e.　　Require Settlement Class Members who wish to exclude themselves to submit an appropriate and timely written request for exclusion by the Opt-Out Deadline, as directed in the Settlement Agreement and Class Notice, and advise that a failure to do so shall bind those Settlement Class Members who remain in the Settlement Class;

f.　　Require Settlement Class Members who wish to object to the Settlement Agreement to submit an appropriate and timely written statement by the Objection Deadline, as directed in the Settlement Agreement and Class Notice, and advise that a failure to do so shall prevent those Settlement Class Members from doing so;

g.　　Require attorneys representing any Settlement Class Member, at the Settlement Class Member's expense, to file a notice of appearance;

h.　　Authorize the Settling Parties to take all necessary and appropriate steps to establish the means necessary to implement the Settlement Agreement; and

i.　　Issue related orders to effectuate the preliminary approval of the Settlement Agreement.

3.4.4. <u>Issuance of Class Notice</u>. Pursuant to the Preliminary Approval Order to be entered by the Court, the Settlement Administrator shall cause the Class Notice to be issued in accordance with Section 6 below.

3.4.5. <u>Final Approval Hearing</u>. In connection with the Preliminary Approval Application, the Parties shall request that the Court schedule and conduct a hearing after dissemination of Class Notice, at which time it will consider whether the Settlement is fair, reasonable, and adequate pursuant to Rule 23 of the Federal Rules of Civil Procedure. Specifically, Named Plaintiffs, after good faith consultation with counsel for all Defendants, shall request that, on or after the Final Approval Hearing, the Court: (i) enter the final Judgment, granting Final Approval of the Settlement and dismissing with prejudice this Litigation; (ii) determine the legal fees and expenses that should be awarded to Class Counsel as contemplated in the Settlement Agreement; and (iii) determine the Case Contribution Award, if any, that should be awarded as contemplated by the Settlement Agreement. Any application for Attorneys' Fees and Expenses shall be made at least forty-five (45) days prior to the Final Approval Hearing. The Settling Parties agree to support entry of final Judgment. The Settling Parties will reasonably cooperate with one another in seeking entry of the final Judgment.

3.5. <u>Condition No. 2: Finality of Judgment</u>. The Court shall enter a final Judgment in substantially similar form as Exhibit E. The final Judgment must be Final in accordance with Section 2.21 above, and shall, among other things:

a. Find that (1) the Court has personal jurisdiction over all Settlement Class Members; (2) the Court has subject matter jurisdiction over the claims asserted in this Litigation; and (3) venue is proper;

b.      Finally approve the Settlement Agreement, pursuant to Fed. R. Civ. P. 23, as fair, reasonable, and adequate;

c.      Finally certify the Settlement Class for settlement purposes only;

d.      Find that the form and means of disseminating the Class Notice complied with all laws, including, but not limited to, the Due Process Clause of the United States Constitution;

e.      Enter final Judgment with respect to the claims of all Settlement Class Members and dismiss the claims of all Settlement Class Members and the Circeo Litigation with prejudice;

f.      Make the Releases in Section 10 of the Settlement Agreement effective as of the date of the final Judgment;

g.      Permanently bar and enjoin Named Plaintiffs and all Settlement Class Members who have not opted out of the settlement, from filing, commencing, prosecuting, intervening in, or participating in (as class members or otherwise) any action in any jurisdiction for the Released Claims;

h.      Permanently bar and enjoin Named Plaintiffs and all Settlement Class members who have not opted out of the settlement from organizing Settlement Class Members, or soliciting the participation of Settlement Class Members, in a separate class for purposes of pursuing any action (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action in any jurisdiction) based on or relating to any of the Released Claims;

i.      Find that, by operation of the entry of the Judgment, Named Plaintiffs and all Settlement Class Members shall be deemed to have forever released, relinquished, and

discharged the Released Persons from any and all Released Claims, including all claims arising out of, relating to, or in connection with the initiation, settlement, prosecution, or dismissal of the Circeo Litigation.

        j.      Authorize the Settling Parties to implement the terms of the Settlement Agreement;

        k.      Retain jurisdiction relating to the administration, consummation, enforcement, and interpretation of the Settlement Agreement, the final Judgment, and for any other necessary purpose; and

        l.      Issue related orders to effectuate the Final Approval of the Settlement Agreement and its implementation.

## 4. SETTLEMENT CONSIDERATION, BENEFITS, AND OTHER RELIEF

4.1.    In consideration for the Releases set forth in Section 10, Defendants will provide the following benefits.

4.2.    <u>Injunctive Relief Relating to Green Tree Servicing LLC.</u>

4.2.1.  Subject to Section 4.4 below, and commencing no later than one hundred and twenty (120) days after the Final Settlement Date, and continuing for a period of five (5) years thereafter, Green Tree Servicing LLC_agrees to the following restrictions with respect to the placement of LPI:

    (i)    Green Tree Servicing LLC will not receive commissions as a result of the placement of LPI Policies.

    (ii)    Green Tree will not enter into any quota share reinsurance arrangements on new or renewal LPI Policies.

(iii)     Subject to the provisions of Section 4.4, below, Green Tree Servicing LLC will not accept payments from any LPI insurer or LPI vendor for any administrative or other service associated with LPI Policies; *provided however*, Green Tree Servicing LLC may accept (1) reimbursements for expenses incurred in performing exposure management functions on behalf of an LPI underwriter, provided that such reimbursements are in amounts approximating Green Tree Servicing LLC's actual costs in providing such services, and (2) payment for bona fide third party services outsourced by an LPI insurer or LPI vendor, including without limitation, interfacing with customers and transferring data.

(iv)     Green Tree Servicing LLC will not place any LPI Policy through an insurer Affiliated with Green Tree Servicing LLC.

(v)      To the extent reasonably available in the marketplace, LPI Policies shall be dual interest for any coverage for which Green Tree Servicing LLC attempts to recoup from borrowers the LPI premiums paid by Green Tree Servicing LLC to the LPI insurer; "dual interest" means that the borrower shall have the right to file a claim under the policy.

(vi)     If Green Tree Servicing LLC elects to place insurance on a borrower's on Site Built Residential Property, unless otherwise required by law, regulation, or contractual agreement, or as directed by any governmental authority (including without limitation government sponsored entities), hazard LPI coverage shall be established at the Last Known Coverage

Amount under the borrower's prior voluntary policy[2] ("LKCA") or, if the LKCA is not actually known (without a duty of investigation) to Green Tree Servicing LLC at the then-unpaid principal balance of the loan.

(vii)   If the borrower's voluntary policy will lapse because of non-payment of premium, and if Green Tree Servicing LLC elects to place insurance on said borrower's Site Built Residential Property, Green Tree Servicing LLC will advance funds to maintain the borrower's voluntary policy in force, provided that: (a) the loan is escrowed for insurance with Green Tree Servicing LLC; (b) the borrower has provided Green Tree Servicing LLC with written authorization, either in the borrower's mortgage instrument or otherwise, allowing Green Tree Servicing LLC to purchase or renew the voluntary insurance policy on the borrower's behalf; and (c) Green Tree Servicing LLC has received a written or other notice stating that the voluntary insurance premiums have not been paid by the borrower and identifying the amount of the premiums for the borrower's existing policy. The borrower shall be responsible for all funds advanced pursuant to this section.

(viii)  Green Tree Servicing LLC agrees to credit the borrower's account with any LPI refund with respect to overlapping insurance within fifteen (15) days of receipt of evidence of voluntary insurance coverage which complies with Green Tree Servicing LLC's insurance requirements.

---

[2] "Voluntary policy" refers to a homeowners, flood or wind insurance policy chosen by a borrower as opposed to insurance coverage provided by an LPI Policy.

4.2.2.  The above provisions set forth in Section 4.2.1 shall also apply to current Affiliates of Green Tree Servicing LLC.  However, if, in the future, the Affiliated entity is no longer affiliated with Green Tree Servicing LLC, then the above provisions shall no longer apply to such former Affiliates.

4.3.  <u>Injunctive Relief Relating to the Assurant Defendants.</u>

4.3.1  Subject to Section 4.4 below, and commencing no later than 120 days after the Final Settlement Date, all Assurant, Inc. underwriting Affiliates, including ASIC, SGIC, VIIC, and ABIC, shall for a period of five (5) years thereafter, not provide directly or indirectly any of the following to Green Tree Servicing LLC or their Affiliates:

(i)  LPI commissions to Green Tree <u>Servicing LLC</u>; *provided however*, ASIC, SGIC, ABIC and VIIC shall be free to pay commissions on Green Tree <u>Servicing LLC</u> LPI Policies to licensed agents not Affiliated with Green Tree Servicing LLC;

(ii)  LPI quota share reinsurance arrangements with Green Tree Servicing LLC; *provided however*, ASIC, SGIC, ABIC and VIIC shall be free to contract for reinsurance arrangements with parties not Affiliated with Green Tree Servicing LLC;

(iii)  Subject to the provisions of Section 4.4, below, payments from ASIC, SGIC, ABIC or VIIC to Green Tree Servicing LLC for any administrative or other LPI-related services; *provided however*, ASIC, SGIC, ABIC and VIIC shall be free to pay Green Tree Servicing LLC for administrative or other services associated with LPI Policies; (1) to reimburse Green Tree Servicing LLC for expenses incurred in performing exposure management

functions on behalf of ASIC, SGIC, ABIC or VIIC, provided that such reimbursements are in amounts approximating Green Tree Servicing LLC's actual costs in providing such services, and (2) payment for bona fide third party services outsourced by an LPI insurer or LPI vendor, including without limitation, interfacing with customers and transferring data, or (3) that are associated with LPI-related services to parties not Affiliated with Green Tree Servicing LLC;

(iv)    Accept payments from Green Tree Servicing LLC for below-cost or free outsourced services provided by ASIC, SGIC, ABIC or VIIC to Green Tree Servicing LLC in connection with LPI; *provided however*, that outsourced services do not include expenses associated with tracking functions that ASIC, SGIC, ABIC or VIIC incur for their own benefit to identify and protect themselves from:  (a) exposure to lost premium and losses on properties on which no other insurance coverage is in effect; or (b) administrative costs associated with providing and subsequently canceling LPI on properties on which LPI is not required.

4.4    The prohibitions and requirements set forth in subsections 4.2.1(iii) and 4.3.1(iii) (above) shall not preclude ASIC, SGIC, ABIC or VIIC from reimbursing "implementation expenses" incurred from time to time by a loan servicer, including Green Tree Servicing LLC.   For purposes of the preceding, "implementation expenses" means those expenses that are demonstrably and directly related to the implementation and ongoing maintenance of a loan servicer's, including Green Tree's, LPI program, including but not limited to:

(i)     Identifying servicer and ASIC, SGIC, ABIC or VIIC processes and system requirements;

(ii)    Allocating and assigning resources to be dedicated to the conversion/implementation to ASIC, SGIC, ABIC or VIIC;

(iii)   Developing project documentation;

(iv)    Developing the project schedule and controls to manage against that schedule;

(v)     Designing, testing and implementation of information technology systems and interfaces needed to exchange information required for the effectiveness of ASIC, SGIC, ABIC or VIIC's LPI program;

(vi)    Diverting mail, telephone, facsimile and web-based communications;

(vii)   Testing accuracy and quality of project deliverables;

(viii)  Training staff on ASIC, SGIC, ABIC or VIIC's product and processes;

(ix)    Establishing and Auditing specific controls to monitor ASIC, SGIC, ABIC or VIIC's service to ensure it meets documented requirements; and

(x)     Any similar activity related to the implementation of ASIC, SGIC, ABIC or VIIC's LPI program at program inception.

4.4.1 "Implementation expenses" that are reimbursed must be supported by documentary or other physical or electronic evidence (such as, but not limited to invoices, work orders or the like) of their expenditure by the mortgage servicer. Such expenses must bear a direct relationship to the implementation of ASIC, SGIC, ABIC or VIIC's LPI program at program inception.

4.5    Conflict.  Should any provision of Sections 4.2 or 4.3 conflict or be inconsistent with (1) any existing or subsequently adopted state or federal statute, regulation, rule, order or regulatory directive, (2) any existing or subsequently adopted agency or investor rule or requirement, or (3) any existing or subsequent legal precedent (including case law) or court order, such statute, regulation, rule, precedent, order, regulatory directive or requirement shall control to the extent of its jurisdictional authority.  In that event, the Stipulation of Settlement and any Final Judgment confirming the Stipulation of Settlement shall be deemed amended to conform to such statute, regulation, rule, order, requirement, or regulatory directive.  The Green Tree Defendants, Assurant, Inc., ASIC, SGIC, ABIC and VIIC shall not be liable for engaging in any practice or failing to engage in any practice during the five (5) year period for prospective prohibitory relief where such conduct was authorized by state or federal statute, regulation, rule, order or regulatory directive or by any investor rule or requirement.

4.6.    Settlement Monetary Consideration.   Those Settlement Class Members who submit a timely, valid, and verified Claim Form, substantially in the form of Exhibit C, by the Claim Deadline in the manner required by this Settlement Agreement, shall receive Claim Settlement Relief under the following terms and conditions.

4.6.1. Overview.   There will be two categories of Claim Settlement Relief available to Settlement Class Members, with differing claim requirements:  (1) Settlement Class Members who are Borrowers Who Were Charged But Did Not Pay And Still Owe Their LPI Premium; and (2) Settlement Class Members who are Borrowers Who Paid Their LPI Premium. As reflected in the Claim Form (Exhibit C), Claimants making Claims must check a box on the Claim Form representing and affirming that they qualify for one of these two categories (and for one of the categories meet certain additional identity confirmation requirements).

4.6.2.  Credit or Payment to Borrowers Who Were Charged But Did Not Pay And Still Owe Their LPI Premium.  For those Borrowers Who Were Charged But Did Not Pay And Still Owe Their LPI Premium who submit a timely, valid, and verified Claim Form, Defendants shall have the option, at their discretion, of either crediting to the mortgage escrow account for the Settlement Class Member's loan at issue, or paying to that Settlement Class Member via check, an amount equal to 12.5% of the Net Premium charged to the Settlement Class Member during the Settlement Class Period for the LPI policy by Green Tree.

4.6.3.  Payment to Borrowers Who Paid Their LPI Premium.  For those Borrowers Who Paid Their LPI Premium who submit a timely, valid, and verified Claim Form, Defendants shall pay to each such Settlement Class Member via check an amount equal to 12.5% of the Net Premium charged to the Settlement Class Member during the Settlement Class Period for the LPI policy by Green Tree.

4.6.4.  Any Settlement Class Member who had multiple LPI Policies issued on his or her property during the Settlement Class Period need only submit a single Claim Form and said Claim Form will be treated as a claim for relief as to all LPI policies that were charged by Green Tree and not cancelled in their entirety during the Settlement Class Period.  The Defendants shall only be obligated to honor one valid Claim Form per mortgage loan regardless of the number of borrowers on that loan or the total number of LPI policies that were charged by Green Tree and not cancelled in their entirety during the Settlement Class Period.  Where there is more than one mortgagor (*e.g.*, husband and wife), all mortgagors must sign the Claim Form for the Claim to be valid.

## 5.  RETENTION OF SETTLEMENT ADMINISTRATOR AND COSTS

5.1.  All Notice and Administrative Costs will be paid by Defendants.

5.2.    The Settlement Administrator shall administer the Settlement in a cost-effective and timely manner.  Without limiting any of its other obligations as stated herein, the Settlement Administrator shall be responsible for Mail Notice, internet advertising, administration of Claim Settlement Relief, and providing all other related support, reporting, and administration as further stated in this Agreement. Defendants may direct the Settlement Administrator to assist with various additional administrative tasks in implementing the Settlement as Defendants shall deem appropriate in their sole discretion.

5.3.    Defendants will coordinate with the Settlement Administrator to provide Mail Notice to the Settlement Class, as provided in this Settlement Agreement.  Because the information about Settlement Class Members that will be provided to the Settlement Administrator will consist of confidential information, non-public personal information, and other information protected by privacy laws, the Settlement Administrator will execute a non-disclosure agreement and will take all reasonable steps to ensure that any information provided to it by Defendants will be used solely for the purpose of effecting this Settlement.   Any such information provided to the Settlement Administrator will not be provided to Named Plaintiffs or Class Counsel, except as permitted by Section 7.4.   The Settlement Administrator shall administer the Settlement in accordance with the terms of this Settlement Agreement and, without limiting the foregoing, shall treat any and all documents, communications, and other information and materials received in connection with the administration of the Settlement as confidential and shall not disclose any or all such documents, communications, or other information to any person or entity except as provided for in this Settlement Agreement or by court order.

5.4.   <u>W9 Forms</u>.   The Settlement Administrator shall complete and provide to Defendants any W9 forms necessary for Defendants to pay for the Notice and Administrative Costs and to otherwise implement this Settlement.

## 6.   NOTICE TO THE CLASS

6.1.   **Mail Notice:**  Subject to the requirements of the Preliminary Approval Order, Notice to those members of the Settlement Class for whom the electronic records of Green Tree reflect a last known mailing address, shall be by means of separate first class mailings to those names and addresses.  The Notices shall be mailed not less than ninety (90) days before the date set by the Court for a Fairness Hearing regarding the settlement. The Mail Notice of Class Action, Proposed Settlement, Fairness Hearing, Right to Appear, Instructions and Class Action Claim Form shall detail how those Settlement Class members so desiring may opt out or object to the settlement, and how members of the Class may make a claim for settlement relief as described in Section 4.6 above.  The Mail Notice shall include Instructions and a Claim Form described in Section 7 of this Settlement Agreement, in the forms of Exhibits A, B, and C, attached (provided that the font size, folding, and other printing elements or presentation may be adjusted to accommodate a booklet format and for efficient envelope and postage considerations).  The parties shall also prepare a Spanish-language translation of the Mail Notice, Claim Instructions, and Claim Form, to be mailed to all Settlement Class Members together with the English language version.  After posting of the Mail Notice by the Settlement Administrator with the United States Postal Service, for any Mail Notices returned as undeliverable, the Settlement Administrator shall utilize the National Change of Address database (the "NCOA") in an attempt to obtain better addresses for such returned Notices, and should the NCOA show a more current address, the Settlement Administrator shall post the returned Mail Notice to the

more current address; *provided however*, if a determination is made in good faith by the Settlement Administrator that it is not possible to further update any particular Settlement Class Member's address(es) in sufficient time to repost the Class Notice(s) at least twenty (20) days before the scheduled Fairness Hearing, then the Settlement Administrator need make no further efforts to provide further Mail Notice to such person(s).

6.2 **Internet Site:** No later than the posting of the Mail Notice, the Settlement Administrator shall establish an Internet site which shall contain copies of the Stipulation of Settlement and Exhibits and the Mail Notice. The Internet site shall also contain Instructions and a Class Action Claim Form which may be downloaded or printed from the Internet site. The Internet site shall have a Uniform Resource Locator which identifies the Internet site as the www.CirceoSettlementInfo.com site. The Internet site shall remain open and accessible through the last day for Settlement Class Members to submit a Claim for Settlement Relief. Settlement Class Members may upload and file their claim forms through the website. In addition, Settlement Class Members shall also have the option of completing their Claim Form online within the Settlement Website, utilizing an esignature format; *provided however*, for those Claims requiring verification documents, the Claimant must upload scanned copies of those verification documents to the Settlement Website, with the appropriate claim number to associate the upload with the Claim.

6.3 **Publication:** A similar but abbreviated Summary Publication Notice of Class Action, Proposed Settlement, Fairness Hearing, and Right to Appear shall be published not less than forty-five (45) days before the date set by the Court for Fairness Hearing regarding this Settlement, which abbreviated Summary Publication Notice shall not be less than 1/8 page in size, and shall be published once in *USA Today* (on a date falling on Monday through Thursday).

The abbreviated Summary Publication Notice shall detail how those Settlement Class Members so desiring may opt out or object to the settlement, and how Settlement Class Members may access the Settlement Website to download a Claim Form necessary to make a Claim for Settlement Relief, and toll-free phone number where they may call to request further information on the Settlement. The form of the Summary Publication Notice shall be agreed upon by the Parties, and the font size, layout, and other presentation elements shall be adjusted to accommodate publication considerations.

6.4. **Internet Advertising**: The Defendants shall cause the Settlement Administrator to make advertisements on the internet directed to Settlement Class Members in form and content recommended by the Settlement Administrator and mutually acceptable to Class Counsel and Defendants, with an aggregate cost to the Defendants not to exceed $30,000.

6.5 <u>Claim Form.</u> As reflected in Exhibits B and C, for Settlement Class Members (both Borrowers Who Were Charged But Did Not Pay And Still Owe Their LPI Premium and Borrowers Who Paid Their LPI Premium) to submit a valid Claim, they must provide all of the following information and make the following written affirmations on the Claim Form: (a) Claimant's current address, phone number, date of birth, and the last four numbers of Claimant's Social Security Number; (b) that Claimant is or was during the Settlement Class Period listed as an insured or additional named insured under an LPI Policy insuring improvements to the Claimant's real property; (c) that Claimant was charged by Green Tree a Net Premium for his or her LPI Policy; (d) that since the issuance of the LPI Policy, Claimant has not filed a Petition under Chapter 7 of the United States Bankruptcy Code, and the Claimant's indebtedness on their residence secured by their deed of trust or mortgage has not been compromised or discharged in bankruptcy; and (e) that Claimant attests and affirms all of the foregoing information under the

following declaration: "I declare (or certify, verify, or state) under penalty of perjury that the information provided by me on this Claim Form is true and correct." All mortgagors on the mortgage for the property insured by the LPI Policy must complete and sign the Claim Form.

6.5.1. In order for Borrowers Who Paid Their LPI Premium to submit a valid Claim, they must make the affirmations set forth in Section 6.5 and also confirm their identity by one of the following methods:

a. The signature of a witness who is 18 years of age or older representing and affirming that they have witnessed the Claimant sign the Claim Form, and this witness affirmation shall include the following: "I declare (or certify, verify, or state) under penalty of perjury that I witnessed the signing of this Claim Form by the Claimant and the foregoing is true and correct;" or

b. Provide a copy of a form of identification that contains a signature and photograph of the Claimant; or

c. Provide a copy of an Green Tree Mortgage Statement issued to the Claimant; or

d. Provide a notarial signature affirming that the Claimant executed the Claim Form making the required affirmations under oath in the presence of the notary, and bearing evidence of the notarial authority in compliance with the law of the state in which it is being executed (*e.g.*, a seal, *etc.*).

6.6. <u>Time for Notice</u>. For those Settlement Class Members for which Defendants' electronic records reflect a last-known mailing address, the Mail Notice shall be mailed by first-class mail not less than ninety (90) days before the date set by the Court for a Final Approval Hearing regarding the Settlement.

## 7. CLAIM FILING, REVIEW, AND APPROVAL PROCESS

7.1. <u>Claim Filing Process.</u>  Settlement Class Members shall be permitted to make a Claim for Claim Settlement Relief one any one of three ways:  1) By mailing (either through posting with the United States Postal Service or through a private mail carrier, such as UPS or Federal Express, provided that proof of the mail date is reflected on the label of the mailing) a written Claim Form providing the information, affirmations, and where appropriate, the identity confirmation required in Section 6.5.1 above, to the Settlement Administrator, on a date no later than the Claim Deadline.  A written Claim Form will also be available on the Settlement Website for Settlement Class Members to download or print out and mail to the Settlement Administrator pursuant to this Section; 2) Settlement Class Members will be permitted to upload and file completed Claims Forms through the website; and 3) Settlement Class Members shall also have the option of completing their Claim Form online within the settlement website, utilizing an esignature format; *provided however*, for those Claims requiring verification documents, the Claimant must upload scanned copies of those verification documents to the settlement website, with the appropriate claim number to associate the upload with the Claim.  Any Settlement Class Member who does not mail, properly upload or submit online, a completed Claim Form by the Claim Deadline shall be deemed to have waived any claim to Claim Settlement Relief and any such Claim Settlement Form will be rejected.

7.2. <u>Claim Review Process.</u>  Following approval of the Settlement at the Final Approval Hearing, the Settlement Administrator shall confirm that each Claim Form submitted is in the form required, that each Claim Form includes the required affirmations, information, and, where appropriate, identity confirmation detailed in Section 6.5.1 above, that each Claim Form was submitted in a timely fashion, and that the Claimant is a member of the Settlement Class.

Full compliance with the requirements of Section 6 and the Claim Form shall be necessary for the submission of a valid Claim, and the absence of any of these requirements shall invalidate the proffered Claim. All such Claim criteria shall be strictly enforced. Any Claimant's failure to provide any of the required affirmations, information, or where appropriate, identity confirmation on the Claim Form, shall result in the putative Claim being deemed invalid, and no Defendant shall have any further obligation to process or make any settlement payment or account credit on such invalid Claim. The Settlement Administrator shall not receive any incentive for denying claims.

7.2.1. However, prior to the denial of any claims pursuant to Sections 7.2, 7.3.1, or any other Section in this Agreement, if any submitted Claim Forms are deemed invalid for any reason (*e.g.*, because they are defective, inaccurate, or incomplete in any way), the Administrator shall promptly advise Class Counsel on a weekly basis so that Class Counsel may follow-up with the Settlement Class Member who submitted such Claim Form in order to cure any deficiency. The Settlement Administrator shall send a notice to claimants submitting deficient claims identifying the deficiency. Any defective, incomplete, or inaccurate Claim Form may be cured and shall be accepted by the Administrator so long as the defect is resolved within 30 days after the Claim Deadline.

7.2.2. To aid in the completion and processing of Claims, the Settlement Administrator shall establish a toll-free interactive voice response phone number with script recordings of information about this Settlement, including information about the Claim Form, utilizing the relevant portions of the language contained in the Notice and Claim Form. The phone number shall remain open and accessible through the last day for Settlement Class Members to submit a Claim. The Settlement Administrator shall make reasonable provision for

Class Counsel to be promptly advised of recorded messages left on the phone number by Settlement Class Members concerning the Action and/or this Settlement, so that Class Counsel may timely and accurately respond to such inquiries; *provided however*, the Administrator shall review the recorded messages before providing them to Class Counsel, and if one or more of the messages requests a blank Claim Form or other similar administrative assistance only, then the Administrator shall handle such administrative request(s), but the Administrator shall provide all other messages to Class Counsel for any further response to the Settlement Class Member.

7.3.    Claim Payment.   Upon confirmation by the Settlement Administrator that the Claim Form is valid, the Settlement Administrator shall make a determination as to the amount of the Claim in accordance with the Net Premium information appearing in the Defendants' electronic records and the formula for providing the Claim Settlement Relief set forth in Section 4.6 (including Sections 4.6.1, 4.6.2, and 4.6.3) above.

7.3.1. Right to Audit.   Subject to the provisions in section 7.2.1 above, Defendants shall have the right to audit each Claim Form, including reviewing the individual loan and/or insurance files for each Claimant who submits a Claim Form.  If Defendants' audit reveals that (i) a Claim Form contains inaccurate information, or (ii) the Claimant is not entitled to the Settlement Benefit claimed, or (iii) the Claimant is entitled to a different Settlement Benefit, Defendants shall notify the Settlement Administrator as to the inaccuracy of the Claim prior to the deadline for processing the Claim, while also providing written notification of the inaccurate Claim to Class Counsel.  Without limitation, the reasons for such notice can include that the Claimant is not entitled to a benefit because there is no amount owed to the Green Tree Defendants due to defenses to collection of the Premium through escrow, such as that the loan has been foreclosed; the account has been closed, service released or charged off; there has been

a judgment against the borrower or a bankruptcy discharge that has relieved the borrower of the obligation to pay the LPI Premium; or the borrower has entered into a short-sale agreement, a deed in lieu of foreclosure, a loan modification agreement, or other agreement entered into after the LPI Policy was placed (which agreement was not later voided) by which the LPI Premium was confirmed and/or modified and/or eliminated. Unless Class Counsel lodges a reasoned and detailed objection with the Settlement Administrator, the Claim shall be processed in accordance with that notice and the information from Defendants' records (rather than the inaccurate information on the Claim Form), and may, if necessary, be denied. If a claim is denied based on (ii) above, the release shall be ineffective as to the claimant's LPI Policy and the Settlement Administrator shall inform the claimant of that result and that the release is ineffective as to that LPI Policy. In that event, the statute of limitations for such claim will be deemed tolled for the period between the opt-out date and the date of such notification from the Settlement Administrator. Defendants shall complete their audit of Claims no later than one-hundred and fifty days (150) days after the Final Settlement Date, and shall have the right to request from the Settlement Administrator any and all information necessary to conduct and complete their audit. Class Counsel and Defendants shall receive one or more reports relating to the Claims, and the distribution of all Claim payments, from the Settlement Administrator.

7.3.2. <u>Notification</u>. Within ninety (90) days after the Final Settlement Date, the Settlement Administrator shall provide the Named Plaintiffs and Defendants with a list of all Settlement Class Members who filed a Claim, whether the Claim was rejected or accepted, and if rejected, the reason it was rejected, and if accepted, the amount to be paid by the Defendants or to be credited by Green Tree to the Claimant's escrow account. The Parties will use their best efforts to amicably resolve any dispute about the processing of any Claim.

7.3.3.  <u>Claimants who are Borrowers Who Paid Their LPI Premium</u>.  The Settlement Administrator shall have one hundred eighty (180) days after the Final Settlement Date within which to process the Claims and remit the appropriate amounts by check to the Claimants who are Borrowers Who Paid Their LPI Premium.  Any check that is remitted to a Claimant who falls within the group of Borrowers Who Paid Their LPI Premium and that is not negotiated within ninety (90) days after issuance shall be cancelled (the checks shall state "void after 90 days"), and Defendants shall not have any further obligation to continue efforts to distribute Claim Settlement Relief to such Claimant.  The Settlement Administrator shall refund to the Defendants all funds on deposit to fund checks that become "void after 90 days."  No interest shall be included as an element of, or be payable or paid on, any claimed amount.

7.3.4.  <u>Claimants who are Borrowers Who Were Charged But Did Not Pay And Still Owe Their LPI Premium</u>.  The Defendants shall have ninety (90) days after the Settlement Administrator provides a list of valid claims within which to either credit the appropriate amount to the escrow accounts of Claimants who are Borrowers Who Were Charged But Did Not Pay And Still Owe Their LPI Premium or to cause the Settlement Administrator to issue checks in the appropriate amount, in the sole discretion of Green Tree.  No interest shall be included as an element of, or be payable or paid, on any credited amount.

7.3.5.  <u>Funding</u>.  Defendants shall fund all amounts required by the Settlement Administrator for distribution of Claim Settlement Relief to Claimants.

7.4.  <u>Information Available to Class Counsel</u>.  Class Counsel shall have the right to interact directly with the Settlement Administrator regarding the administration of this Settlement provided that:  (a) Class Counsel pay for any costs associated with such interactions; and (b) Defendants are notified of all such interactions.  Upon the reasonable request of Class

Counsel, the Settlement Administrator shall inform Class Counsel, among other things and with the exception of confidential information, non-public personal information, and other information protected by privacy laws, of the amount of any Settlement Class Member's LPI premium associated with a Claimant's LPI Policy reflected in the electronic information provided to the Settlement Administrator by Defendants.   Nothing in this Section or this Settlement Agreement shall authorize the Settlement Administrator to disclose to Class Counsel any confidential information, non-public personal information, and other information protected by privacy laws.

## 8.   COVENANTS

The Settling Parties covenant and agree as follows:

8.1.   <u>Covenants Not to Sue</u>.  Named Plaintiffs and the Settlement Class covenant and agree:  (i) not to file, commence, prosecute, intervene in, or participate in (as class members or otherwise) any action in any jurisdiction based on or relating to any of the Released Claims, or the facts and circumstances relating thereto, against any of the Released Persons; (b) not to organize or solicit the participation of Settlement Class Members in a separate class for purposes of pursuing any action (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action in any jurisdiction) based on or relating to any of the Released Claims or the facts and circumstances relating thereto; and (c) that the foregoing covenants and this Agreement shall be a complete defense to any of the Released Claims against any of the Released Persons.

8.2.   <u>Cooperation</u>.  The Settling Parties agree to cooperate reasonably and in good faith with the goal of obtaining entry of a final Judgment as quickly as is reasonably practicable and expeditiously reaching agreement on the matters requiring mutual agreement as set forth in this

Settlement Agreement, including, but not limited to, the expeditious agreement to the terms of all class notice documents and settlement administration protocols, and the preparation and execution of all other reasonable documents necessary to achieve Final Approval of the Settlement by the Court. Further, the Named Plaintiffs and Defendants shall consult with mediator Rodney Max as necessary in effectuating this Section.

## 9.    REPRESENTATIONS AND WARRANTIES

9.1.    <u>Representations and Warranties.</u>

9.1.1.    Named Plaintiffs represent and warrant that they are the sole and exclusive owner of all Released Claims and that they have not assigned or otherwise transferred any interest in any of the Released Claims against any of the Released Persons, and further covenant that they will not assign or otherwise transfer any interest in any of Named Plaintiffs' Released Claims.

9.1.2.    Named Plaintiffs represent and warrant that they have no surviving claim or cause of action against any of the Released Persons with respect to any of the Released Claims.

9.2.    <u>The Settling Parties' Representations and Warranties.</u>  The Settling Parties, and each of them on his, her, or its own behalf only, represent and warrant:

9.2.1.    That they are voluntarily entering into the Settlement Agreement as a result of arm's-length negotiations among their counsel, that in executing the Settlement Agreement, they are relying solely upon their own judgment, belief, and knowledge, and the advice and recommendations of their own independently selected counsel, concerning the nature, extent and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof; and that, except as provided herein, they have not been

influenced to any extent whatsoever in executing the Settlement Agreement by representations, statements, or omissions pertaining to any of the foregoing matters by any Party or by any person representing any party to the Settlement Agreement.  Each of the Settling Parties assumes the risk of mistake as to facts or law.

**10.    RELEASES**

10.1.   Released Claims of Settlement Class.   Upon the Final Settlement Date, each member of the Settlement Class shall, by operation of the final Judgment, be deemed to have fully, conclusively, irrevocably, forever, and finally released, relinquished, and discharged the Released Persons from any and all claims, actions, causes of action, suits, debts, sums of money, payments, obligations, reckonings, promises, damages, penalties, attorney's fees and costs, liens, judgments, and demands of any kind whatsoever that each member of the Settlement Class may have until the close of the Settlement Class Period or may have had in the past, whether in arbitration, administrative, or judicial proceedings, whether as individual claims or as claims asserted on a class basis, whether past or present, mature or not yet mature, known or unknown, suspected or unsuspected, whether based on federal, state, or local law, statute, ordinance, regulations, contract, common law, or any other source, that were or could have been sought or alleged in the Litigation that relate, concern, arise from, or pertain in any way to the Released Persons' conduct, policies, or practices concerning Green Tree's placement, or the Assurant Defendants' issuance, of LPI Policies or to the receipt or disclosure or nondisclosure of charges related to the advancing of LPI premiums during the Settlement Class Period, including but not limited to conduct, policies or practices concerning LPI Policies or to charges for Green Tree's Placement of LPI Policies during the Settlement Class Period.  In agreeing to this Release,

Named Plaintiffs explicitly acknowledge that unknown losses or claims could possibly exist and that any present losses may have been underestimated in amount or severity.

      10.1.1. The Release in Section 10.1 shall include, but not be limited to, all claims related to Green Tree's insurance requirements; the relationship, whether contractual or otherwise, between Green Tree and the Assurant Defendants regarding LPI, including, but not limited to, the procuring, underwriting, placement, insurance tracking, or costs of LPI Policies; the coverage amount, duration, issue date, alleged "backdating," or alleged excessiveness of any LPI Policies placed or charged by Green Tree; the payment or receipt of commissions, expense reimbursements, alleged "kickbacks," or any other compensation under any LPI Policies placed or charged by Green Tree; any alleged "tying" arrangement involving Green Tree and LPI; any alleged breach of fiduciary duty by Green Tree concerning LPI Policies; any alleged tortious interference by the Assurant Defendants with mortgage loans serviced by Green Tree; the receipt or disclosure or non-disclosure of any and all payments, expenses, fees, finance charges, other charges, or features pertaining in any way to, in connection with, or under any LPI Policies or coverage under such LPI Policies and charges for such coverage placed or charged by Green Tree; the receipt or non-disclosure of any benefit under any LPI Policies or coverage under such LPI Policies and charges for such coverage placed or charged by Green Tree; the content, manner, or accuracy of any communications regarding the placement of any LPI Policies by Green Tree; and to the regulatory approval or non-approval of any LPI Policy, or the premium thereon, placed or charged by Green Tree. Each Settlement Class Member shall be considered, by operation of the Final Judgment, to have received full and final redress, including but not limited to any refund, reimbursement, restitution, or damages for the conduct covered by the release.

10.1.2. The Release in Section 10.1 shall not cover claims arising after the close of the Settlement Class Period, nor insurance claims for losses relating to properties insured under any LPI Policy placed or charged for by Green Tree. Nothing in Section 10.1 shall be deemed a release of any Settlement Class Member's respective rights and obligations under this Agreement. Further, nothing in Section 10.1 or any other provision of this Stipulation and Settlement Agreement shall be deemed a release of claims by borrowers who were charged for LPI that was purchased by mortgage servicers other than Green Tree.

10.1.3. Except to the extent that any such obligation is being released pursuant to Section 10.1, this Settlement Agreement shall not release Defendants from any existing obligation to any Settlement Class Member under any loan, note, mortgage, or deed of trust. This provision is not meant to and does not limit the Release in Section 10.1.

10.2.3. The Named Plaintiffs and Class Counsel further represent that there are no outstanding liens or claims against the Circeo Litigation, it being recognized that the Named Plaintiffs will solely be charged with the responsibility to satisfy any other liens or claims asserted against the Circeo Litigation.

10.3. Without in any way limiting their scope, these Releases cover by example and without limitation, any and all claims for attorneys' fees, costs, expert fees, or consultant fees, interest, or litigation fees, or any other fees, costs, and/or disbursements incurred by Class Counsel, the Named Plaintiffs, or any Settlement Class Members in connection with or related in any manner to the Circeo Litigation or Longest Litigation, the settlement of the Circeo Litigation, the administration of such Settlement, and/or the Released Claims, except to the extent otherwise specified in the Settlement Agreement.

10.4.   In connection with the foregoing Releases, the Named Plaintiffs and each Settlement Class Member shall be deemed, as of the entry of the final Judgment, to have waived any and all provisions, rights, benefits conferred by Section 1542 of the California Civil Code, and any statute, rule and legal doctrine similar, comparable, or equivalent to California Civil Code Section 1542, which provides that:

**A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

To the extent that anyone might argue that these principles of law are applicable—notwithstanding that the Settling Parties have chosen Florida law to govern this Settlement Agreement—the Named Plaintiffs hereby agree, and each Settlement Class Member will be deemed to agree, that the provisions of all such principles of law or similar federal or state laws, rights, rules, or legal principles, to the extent they are found to be applicable herein, are hereby knowingly and voluntarily waived, relinquished, and released.  The Named Plaintiffs recognize, and each Settlement Class Member will be deemed to recognize, that, even if they may later discover facts in addition to or different from those which they now know or believe to be true, they nevertheless agree that, upon entry of the final Judgment, they fully, finally, and forever settle and release any and all claims covered by these Releases.   The Settling Parties acknowledge that the foregoing Releases were bargained for and are a material element of the Agreement.

10.5.   This Agreement and the Releases herein do not affect the rights of Settlement Class Members who timely and properly submit a Request for Exclusion from the Settlement in accordance with the requirements in Section 11 of this Settlement Agreement.

10.6.   The administration and consummation of the Settlement as embodied in this Settlement Agreement shall be under the authority of the Court.   The Court shall retain jurisdiction to protect, preserve, and implement the Settlement Agreement, including, but not limited to, enforcement of the Releases contained in the Agreement.   The Court shall retain jurisdiction in order to enter such further orders as may be necessary or appropriate in administering and implementing the terms and provisions of the Settlement Agreement.

10.7.   Upon issuance of the final Judgment: (i) the Settlement Agreement shall be the exclusive remedy for any and all Settlement Class Members, except those who have properly requested exclusion (opted out) in accordance with the terms and provisions hereof; (ii) the Released Persons shall not be subject to liability or expense for any of the Released Claims to any Settlement Class Member(s); (iii) Settlement Class Members who have not opted out shall be permanently barred and enjoined from filing, commencing, prosecuting, intervening in, or participating in (as class members or otherwise) any action in any jurisdiction based on or relating to any of the Released Claims or the facts and circumstances relating thereto; and (iv) Settlement Class Members who have not opted out shall be permanently barred and precluded from organizing Settlement Class Members, or soliciting the participation of Settlement Class Members, for purposes of pursuing any action (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action in any jurisdiction) based on or relating to any of the Released Claims or the facts and circumstances relating thereto.

10.8.   Nothing in this Settlement Agreement and Releases shall preclude any action to enforce the terms of the Settlement Agreement, including participation in any of the processes detailed therein.   The Releases set forth herein are not intended to include the release of any

rights or duties of the Settling Parties arising out of the Settlement Agreement, including the express warranties and covenants contained herein.

## 11. OPT-OUT RIGHTS

11.1. A Settlement Class Member who wishes to opt out of the Settlement Class must do so in writing. In order to opt out, a Settlement Class Member must complete and send to the Settlement Administrator, at the address listed in the Class Notice and on the Settlement Website for this Settlement, a Request for Exclusion that is postmarked no later than the Opt Out Deadline, as specified in the Class Notice (or as the Court otherwise requires). The Request for Exclusion must: (a) identify the case name; (b) identify the name and address of the Settlement Class Member; (c) be personally signed by the Settlement Class Member requesting exclusion; and (d) contain a statement that indicates a desire to be excluded from the Settlement Class in the Circeo Litigation, such as "I hereby request that I be excluded from the proposed Settlement Class in the Circeo Class Action." Mass or class opt outs shall not be allowed.

11.1.1. Any Settlement Class Member who does not opt out of the Settlement in the manner described herein shall be deemed to be part of the Settlement Class, and shall be bound by all subsequent proceedings, orders, and judgments.

11.1.2. A Settlement Class Member who desires to opt out must take timely affirmative written action pursuant to this Section (Section 11), even if the Settlement Class Member desiring to opt out of the Class (a) files or has filed a separate action against any of the Released Persons, or (b) is, or becomes, a putative or actual class member in any other class action filed against any of the Released Persons.

11.2. Any Settlement Class Member who properly opts out of the Settlement Class shall not: (a) be bound by any orders or judgments relating to the Settlement; (b) be entitled to relief

under, or be affected by, the Agreement; (c) gain any rights by virtue of the Agreement; or (d) be entitled to object to any aspect of the Settlement.

11.3.   The Settlement Administrator shall provide Class Counsel and Defense Counsel with a list of all timely Requests For Exclusion within seven (7) business days after the Opt Out Deadline. ·

11.4.   If the number of Settlement Class Members who properly and timely exercise their right to opt out of the Settlement Class exceeds five percent (5%) of the total number of Settlement Class Members, the Settling Parties stipulate and agree that Defendants shall have the right to terminate this Agreement without penalty or sanction.

11.5   Except for those Settlement Class Members who timely and properly file a Request for Exclusion in accordance with Section 11, all other Settlement Class Members will be deemed to be Settlement Class Members for all purposes under the Agreement, and upon the Final Settlement Date, will be bound by its terms, regardless of whether they receive any monetary relief or any other relief.

## 12.   OBJECTIONS

12.1.   Overview.  Any potential Settlement Class Member who does not opt out of the Settlement may object to the Settlement.  To object, the Settlement Class Member must comply with the procedures and deadlines in this Agreement.

12.2.   Process.  Any potential Settlement Class Member who wishes to object to the Settlement must do so in writing on or before the Objection Deadline, as specified in the Class Notice and Preliminary Approval Order.  The written objection must be filed with the Clerk of Court, and mailed (with the requisite postmark) to Class Counsel and Defense Counsel (at the addresses identified in Section 19), no later than the Objection Deadline.

12.2.1. The requirements to assert a valid written objection shall be set forth in the Class Notice and on the Settlement Website, and, to be valid, the written objection must include: (a) the case name and number; (b) the name, address, telephone number of the Settlement Class Member objecting and, if represented by counsel, of his/her counsel; (c) the basis for the objection; and (d) a statement of whether he/she intends to appear at the Final Approval Hearing, either with or without counsel.

12.2.2. Any Settlement Class Member who fails to object to the Settlement in the manner described in the Class Notice and consistent with this Section shall be deemed to have waived any such objection, shall not be permitted to object to any terms or approval of the Settlement at the Final Approval Hearing, and shall be foreclosed from seeking any review of the Settlement or the terms of the Agreement by appeal or other means.

12.3. <u>Appearance</u>. Subject to approval of the Court, any Class Member who files and serves a written objection in accordance with Section 12.2 and the Class Notice may appear, in person or by counsel, at the Final Approval Hearing held by the Court, to show cause why the proposed Settlement should not be approved as fair, adequate, and reasonable, but only if the objecting Settlement Class Member: (a) files with the Clerk of the Court a notice of intention to appear at the Final Approval Hearing by the Objection Deadline ("Notice Of Intention To Appear"); and (b) serves the Notice of Intention to Appear on all counsel designated in the Class Notice by the Objection Deadline.

12.3.1. The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that the objecting Settlement Class Member will present to the Court in connection with the Final Approval Hearing.

12.3.2. Any Settlement Class Member who does not file a Notice of Intention to Appear in accordance with the deadlines and other specifications set forth in the Agreement and Class Notice shall not be entitled to appear at the Final Approval Hearing and raise any objections.

## 13. SETTLEMENT APPROVAL

13.1. Within fourteen (14) days of this Agreement's date, Named Plaintiffs shall apply to the Court for entry of the proposed Preliminary Approval Order and setting of a Final Approval Hearing.

13.2. Not later than fifteen (15) days before the Final Approval Hearing, the Settlement Administrator will provide Defense counsel with an affidavit or declaration by a competent affiant or declarant, attesting that the Class Notice has been disseminated in accordance with the Preliminary Approval Order and identifying the number of Requests for Exclusion to the Settlement. Not later than ten (10) days before the Final Approval Hearing, Class Counsel shall file the affidavit or declaration with the Court prior to the Final Approval Hearing.

13.3. Named Plaintiffs shall move for and brief the issue of Final Approval of the Settlement in accordance with the Preliminary Approval Order or such other or further order of the Court.

13.4. At the Final Approval Hearing, Named Plaintiffs shall move for entry of the proposed Judgment and present arguments in support thereof.

13.5. Promptly after the Final Settlement Date, Settlement Class Members shall dismiss with prejudice all claims, actions, or proceedings that have been brought by or involve any Settlement Class Member in any other jurisdiction and that are released pursuant to this Settlement Agreement.

14. **CERTIFICATION OF NATIONWIDE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES**

14.1.    On October 9, 2015, Plaintiffs filed a First Amended Complaint adding the claims of Plaintiffs Delores Santos Favela, Carlene Longest, Junxiu "Alex" Cai, and Lifen "Regina" Cai, adding ASIC, SGIC, ABIC, and VIIC as defendants, and conforming the definition of the Class therein to that appearing in Section 3 below.  All Parties consented to this amendment for purposes of effectuating this Settlement.

14.2.    After the Preliminary Approval Order is entered, Named Plaintiffs shall move for Final Approval of the Settlement and entry of final Judgment, and shall request that the preliminary certification of the nationwide Settlement Class for settlement purposes be made final.

14.3.    If the Settlement is not granted final approval, or this Agreement is otherwise terminated or rendered null and void, the certification of the above-described nationwide Settlement Class shall be automatically vacated and shall not constitute evidence or a binding determination that the requirements for certification of a class for trial purposes in this or any other action can be or have been satisfied; in such circumstances, Defendants reserve and shall have all rights to challenge certification of a nationwide Settlement Class or any other Class for trial purposes in the Litigation, or in any other action, on all available grounds as if no nationwide Settlement Class had been certified.

15. **ATTORNEYS' FEES, EXPENSES, AND NAMED PLAINTIFF'S CASE CONTRIBUTION AWARD**

15.1.    Any application for Attorneys' Fees and Expenses shall not exceed $5,200,000.

15.2.    Defendants agree not to oppose or otherwise object to an application by Class Counsel for the award of Attorneys' Fees and Expenses in this Action in an amount not to

exceed $5,200,000. Class Counsel agree to not to seek an amount of Attorneys' Fees and Expenses in excess of $5,200,000. Class Counsel agree that the amounts of such costs and fees awarded shall compensate them for all legal work in the Litigation up to and including the date of the Final Judgment, including any appeal of the Judgment, as well as for all legal work and costs that may be incurred in the Action after the date of the Final Judgment. Provided any award of Attorneys' Fees and Expenses does not exceed $5,200,000, Defendants shall pay the Attorneys' Fees and Expenses made by the Court in the final Judgment in the Circeo Litigation within five (5) days after the Final Settlement Date. If for any reason an award of Attorneys' Fees and Expenses exceeds $5,200,000, within five (5) days of the order of such an award, Defendants shall have the right, and they may, within their sole discretion, terminate this Settlement and have this Settlement Agreement deemed null and void. In the event the Court awards Class Counsel less than $5,200,000 in Attorneys' Fees and Expenses, this Settlement Agreement shall nonetheless remain in full force and effect.

15.3. Within thirty (30) days after the entry of the Final Judgment, Defendants shall deposit the amount of Attorneys' Fees and Expenses awarded by the Court (not to exceed $5,200,000) in an interest bearing account of Defendants' choosing. The Attorneys' Fees and Expenses (not to exceed $5,200,000), along with any interest earned, shall be disbursed to the firm Trust Account of Kozyak, Tropin & Throckmorton, P.A. within five (5) business days after the Final Settlement Date. If for any reason the final Judgment does not become Final within the meaning of Section 2.21 (*i.e.*, the Final Settlement Date does not occur), all money in the interest bearing account, including the interest accumulated, shall be returned to the Defendants within five (5) days after the occurrence of the condition or event that prevents the final Judgment from becoming Final.

15.4.    In addition to the Claim Settlement Relief otherwise due to a Settlement Class Member of the Settlement Class, Defendants agree to pay each Named Plaintiff a Case Contribution Award as awarded by the Court in an amount not to exceed the sum of $5,000.00 each, and shall deliver to Named Plaintiffs' Counsel separate checks made payable to each Named Plaintiff awarded a Case Contribution Award, within five (5) days after the Final Settlement Date.

15.4.1. If the Court awards any of the Named Plaintiffs Case Contribution Awards, they shall each provide to Defendants a completed W9 form within 10 business days after the Final Judgment.

15.5.    The procedure for and the grant or denial or allowance or disallowance by the Court of the Attorneys' Fees and Expenses and Case Contribution Awards are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement, and any order or proceedings relating to the applications for Attorneys' Fees and Expenses and Case Contribution Award, or any appeal from any order relating thereto or reversal or modification thereof, will not operate to terminate or cancel this Agreement, or affect or delay the finality of Judgment approving the Agreement and the Settlement, except as provided for in Section 15.2.

16.    **CONFIDENTIALITY; COMMUNICATIONS TO MEDIA AND PUBLIC**

16.1    The Parties agree that the terms of this Settlement shall remain confidential and not be disclosed by any party until the Settlement Agreement is filed in connection with Named Plaintiffs' Preliminary Approval Application.

16.2    The Named Plaintiffs and Defendants agree further that both before and after Preliminary Approval of the Settlement, they shall not publish a press release or a release on the

Internet concerning the Settlement without the prior written review and approval of the Named Plaintiffs or Defendants, as the case may be, which approval shall not be unreasonably withheld or delayed.

16.3    The Named Plaintiffs and Defendants agree that both before and after Preliminary Approval, if any print or electronic media outlet contacts any party or its counsel seeking information or a statement regarding the Settlement, in the absence of a response agreed upon by all Named Plaintiffs and Defendants, no information will be provided in response to such inquiries except to the extent such information appears as part of the public record.

16.4    For the avoidance of any doubt, nothing in this Settlement Agreement prevents the Parties or the Released Parties from making any disclosures required to effectuate this Settlement Agreement or from making any disclosures required by law.

## 17.    TERMINATION AND EFFECT THEREOF

17.1.    This Agreement shall be terminable by any Party if any of the conditions of Section 3 are not fully satisfied, or if the conditions of Section 11.4 occur, unless they are waived in writing signed by authorized representatives of the Named Plaintiffs and Defendants.

17.2.    This Agreement shall also terminate at the discretion of any Named Plaintiff or Defendant if: (1) the Court, or any appellate court(s), rejects, modifies, or denies approval of any portion of this Agreement or the proposed Settlement that is material, including without limitation, the terms or relief, the findings or conclusions of the Court, the provisions relating to Class Notice, the definition of the Settlement Class, and/or the terms of the Releases; (2) the Court, or any appellate court(s), does not enter or completely affirm, or alters, or restricts, or expands, any portion of the final Judgment, or any of the District Court's findings of fact or

conclusions of law, that is material; or (3) if all of the conditions required to be met before the Final Settlement Date do not occur.

17.3.   If this Agreement is terminated as provided herein, either automatically or by a Party, the Settlement shall be null and void from its inception and the Settling Parties will be restored to their respective positions in the Circeo Litigation as of the date of Preliminary Approval.  In such event, the terms and provisions of this Agreement will have no further force and effect with respect to the Settling Parties and will not be used in the Circeo Litigation, or in any other proceeding for any purpose, and any Judgment or order entered by the Court in accordance with the terms of this Agreement will be treated as vacated, *nunc pro tunc*.

## 18.    MISCELLANEOUS PROVISIONS

18.1.   Named Plaintiffs and Settlement Class Members who have made or who make a claim for benefits in the future on their LPI Policy will not be affected in any way as a result of their participation in this Settlement, and may participate in this Settlement to the same extent as Named Plaintiff or Settlement Class Members who have not made a claim on their LPI Policy.

18.2    There will be no offset to any amounts received by any Named Plaintiffs or Settlement Class Member under this Settlement to account for any payments to Named Plaintiffs or Settlement Class Members under the National Mortgage Settlement or any other settlement between Green Tree and any governmental or private entity.  Nor will any payments to any Named Plaintiffs or Settlement Class Member be an offset against any payments to Named Plaintiffs or Settlement Class Members under the National Mortgage Settlement or any other settlement between Green Tree and any governmental or private entity.

18.3.   The Settling Parties acknowledge that it is their intent to consummate this Agreement, and they agree to cooperate to the extent reasonably necessary to effectuate and

implement all terms and conditions of this Agreement and to exercise their best efforts to accomplish the foregoing terms and conditions of this Agreement.

18.4.   The Settling Parties intend the Settlement to be a final and complete resolution of all disputes between them with respect to the Circeo Litigation. The Settlement compromises claims that are contested and will not be deemed an admission by any Settling Party as to the merits of any claim or defense.  The Settling Parties agree that the consideration provided to the Settlement Class and the other terms of the Settlement were negotiated in good faith and at arm's length by the Settling Parties, and reflect a Settlement that was reached voluntarily after consultation with competent legal counsel.  The amounts paid are to compromise the claimants' claims for damages and the amounts paid represent the claimants' compensation for such alleged damages.

18.5.   Neither this Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement is or may be deemed to be or may be used as an admission or evidence of the validity of any Released Claims, or of any wrongdoing or liability of any Defendant; or is or may be deemed to be or may be used as an admission of, or evidence of, any fault, omission, wrongdoing, or liability of any Defendant in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.  Defendants may file this Agreement and/or the Judgment in any action that may be brought against them in order to support any defense or counterclaim, including, without limitation, those based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion, issue preclusion, or similar defense or counterclaim.

18.6.    All agreements made and orders entered during the course of the Circeo Litigation relating to the confidentiality of information will survive this Agreement.

18.7.    All of the Exhibits to this Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

18.8.    This Agreement may be amended or modified only by a written instrument signed by or on behalf of all Named Plaintiffs and Defendants or their respective successors-in-interest.

18.9.    This Agreement and the Exhibits attached hereto constitute the entire agreement among the Settling Parties, and no representations, warranties, or inducements have been made to any Party concerning this Agreement or its Exhibits other than the representations, warranties, and covenants covered and memorialized herein.   Except as otherwise provided herein, the Settling Parties will bear their own respective costs.

18.10.    Class Counsel, on behalf of the Settlement Class, are expressly authorized by Named Plaintiffs to take all appropriate action required or permitted to be taken by the Class pursuant to this Agreement to effectuate its terms, and are expressly authorized to enter into any modifications or amendments to this Agreement on behalf of the Settlement Class that Class Counsel deem appropriate.

18.11.    This Agreement may be executed in one or more counterparts. All executed counterparts and each of them will be deemed to be one and the same instrument. A complete set of counterparts will be submitted to the Court.

18.12.    This Agreement will be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties.

18.13. The Court will retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and all Settling Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement.

18.14. None of the Settling Parties, or their respective counsel, will be deemed the drafter of this Agreement or its Exhibits for purposes of construing the provisions thereof. The language in all parts of this Agreement and its Exhibits will be interpreted according to its fair meaning, and will not be interpreted for or against any Settling Party as the drafter thereof.

18.15. The Settling Parties stipulate to stay all proceedings in both the Circeo Litigation and the Longest litigation until the approval of this Agreement has been finally determined, except the stay of proceedings shall not prevent the filing of any motions, affidavits, and other matters necessary to obtain and preserve final judicial approval of this Agreement.

18.16. Except as agreed by the Parties in writing, within thirty (30) days after the Final Settlement Date, Class Counsel shall destroy all electronically stored information, testimony, or other information produced by Defendants in both the Circeo Litigation and the Longest litigation , including the mediation for the Circeo Litigation, and shall so certify in writing.

18.17. The Settlement shall be governed by the laws of the State of Florida, except to the extent that the law of the United States governs any matters set forth herein, in which case such federal law shall govern.

18.18. The following principles of interpretation apply to the Agreement: (a) the plural of any defined term includes the singular, and the singular of any defined term includes the plural, as the case may be; (b) references to a person are also to the person's successor-in-interest; and (c) whenever the words "include," includes," or 'including" are used in the

Agreement, they shall not be limiting, but rather shall be deemed to be followed by the words "without limitation."

18.19. The Settlement Agreement shall not be subject to collateral attack by any Settlement Class Member or any recipient of the notices of the Settlement Class after the Judgment is entered.

## 19. NOTICES

19.1. All Notices (other than the Class Notice) required by the Agreement shall be made in writing and communicated by fax and mail to the following addresses:

All Notices to Class Counsel shall be sent to Class Counsel, c/o:
Adam M. Moskowitz
Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
Telephone: (305) 372-1800
Facsimile: (305) 372-3508
*Counsel for Named Plaintiff and Class*

All Notices to Defense Counsel shall be sent to Defense Counsel, c/o:

John B. Sullivan
Severson & Werson
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439
*Counsel for Green Tree*

Frank G. Burt
Carlton Fields Jorden Burt, P.A.
1025 Thomas Jefferson Street, NW
Suite 400 East
Washington DC 20007-5208
Telephone: (202) 965-8140
Facsimile: (202) 965-8104
*Counsel for Assurant Defendants*

19.2.   The notice recipients and addresses designated above may be changed by written agreement of the Named Plaintiffs and Defendants.

19.3.   Upon the request of any of the Named Plaintiffs and Defendants, the Named Plaintiffs and Defendants agree to promptly provide each other with copies of objections, Requests for Exclusion, or other similar documents received from Settlement Class Members in response to the Class Notice.

IN WITNESS WHEREOF, the Settling Parties have executed and caused this Settlement on the dates set forth below.

Dated: _____     By: _____
                               Name:
                                     Title:

                               *Green Tree Servicing, LLC* and *Green Tree Insurance Agency, Inc.*

Dated: 10/30/2015              By: _____
                                     Name:  Peter J. Loughlin
                                     Title:  Vice President

                               *American Reliable Insurance Company*

Dated: 10/30/2015              By: _____
                                     Name:  Peter J. Loughlin
                                     Title:  Vice President

                               *American Security Insurance Company*

Dated: 10/30/2015              By: _____
                                     Name:  Peter J. Loughlin
                                     Title:  Vice President

                               *Voyager Indemnity Insurance Company*

Dated: 10/30/2015              By: _____
                                     Name:  Peter J. Loughlin
                                     Title:  Vice President

                               *Standard Guaranty Insurance Company*

Dated: 10/30/2015        By: _____

Name:  Peter J. Loughlin
Title:  Vice President

*American Bankers Insurance Company of Florida*

Dated: _____        By: _____

Name: _____

*Counsel for Plaintiffs and the Class*

Dated: _____        By: _____

Name: _____

*Renata Circeo-Loudon*

Dated: _____        By: _____

Name: _____

*Louis J. Circeo*

Dated: _____        By: _____

Name: _____

*Delores Santos Favela*

Dated: _____        By: _____

Name: _____

*Carlene Longest*

Dated: _____        By: _____

Name: _____

*Junxiu "Alex" Cai*

Dated: _____        By: _____

Name: _____

*Lifen "Regina" Cai*

Dated: _____     By: _____
                                Name:
                                Title:

                                *American Bankers Insurance Company of*
                                *Florida*


Dated: _____     By: _____
                                Name:

                                *Counsel for Plaintiffs and the Class*


Dated: _____     By: _____
                                Name:

                                *Renata Circeo-Loudon*


Dated: _____     By: _____
                                Name:

                                *Louis J. Circeo*

Dated: 11/06/15            By: _____
                                Name:

                                *Delores Santos Favela*


Dated: _____     By: _____
                                Name:

                                *Carlene Longest*


Dated: _____     By: _____
                                Name:

                                *Junxiu "Alex" Cai*


Dated: _____     By: _____
                                Name:

                                *Lifen "Regina" Cai*

IN WITNESS WHEREOF, the Settling Parties have executed and caused this Settlement on the dates set forth below.

Dated: October 30, 2015

By: _____
Name:   Stuart D. Boyd
Title: Assistant Secretary

*Green Tree Servicing LLC* and *Green Tree Insurance Agency, Inc.*

Dated: _____

By: _____
Name:
Title:

*American Reliable Insurance Company*

Dated: _____

By: _____
Name:
Title:

*American Security Insurance Company*

Dated: _____

By: _____
Name:
Title:

*Voyager Indemnity Insurance Company*

Dated: _____

By: _____
Name:
Title:

*Standard Guaranty Insurance Company*

Dated: _____     By: _____
                                  Name:
                                  Title:

                                  *American Bankers Insurance Company of*
                                  *Florida*


Dated: _____     By: _____
                                  Name:

                                  *Counsel for Plaintiffs and the Class*


Dated: ___10/29/15_____   By: _____
                                  Name:

                                  *Renata Circeo-Loudon*


Dated: ___10/29/15_____   By: _____
                                  Name:

                                  *Louis J. Circeo*


Dated: _____     By: _____
                                  Name:

                                  *Delores Santos Favela*


Dated: _____     By: _____
                                  Name:

                                  *Carlene Longest*


Dated: _____     By: _____
                                  Name:

                                  *Junxiu "Alex" Cai*


Dated: _____     By: _____
                                  Name:

                                  *Lifen "Regina" Cai*


11293.0387/5400394.1

PDF created with pdfFactory Pro trial version www.pdffactory.com

Dated: _____     By: _____
                                  Name:
                                  Title:

                                  *American Bankers Insurance Company of*
                                  *Florida*

Dated: 11 | 2 | 15           By: _____
                                  Name:

                                  *Counsel for Plaintiffs and the Class*

Dated: _____     By: _____
                                  Name:

                                  *Longest Litigation Counsel and additional*
                                  *Counsel for the Class*

Dated: 11/2/2015             By: _____
                                  Name: Caleb Marker
                                  Zimmerman Reed LLP

                                  *Renata Circeo-Loudon*

Dated: _____     By: _____
                                  Name:

                                  *Louis J. Circeo*

Dated: _____     By: _____
                                  Name:

                                  *Delores Santos Favela*

Dated: _____     By: _____
                                  Name:

                                  *Carlene Longest*

Dated: 11/02/2015            By: _____
                                  Name:

                                  *Junxiu "Alex" Cai*

Dated: _____ By: _____

Name:
Title:

*American Bankers Insurance Company of Florida*

Dated: _____ By: _____

Name:

*Counsel for Plaintiffs and the Class*

Dated: _____ By: _____

Name:

*Longest Litigation Counsel and additional Counsel for the Class*

Dated: _____ By: _____

Name:

*Renata Circeo-Loudon*

Dated: _____ By: _____

Name:

*Louis J. Circeo*

Dated: _____ By: _____

Name:

*Deldres Santos Favela*

Dated: 11.2.15 By: _____

Name:

*Carlene Longest*

Dated: _____ By: _____

Name:

*Junshi "Alex" Col*

11293.003 0750394 2

Dated: 11/02/2015          By: _____

Name: _____

*Lifen "Regina" Cai*